No. 15-1245
(Judge Wolski)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ESTATE OF ERNEST GOTTDIENER, ET. AL.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:                          BRIAN A. MIZOGUCHI
                                     Assistant Director
DAVID A. LEVITT
Trial Attorney                       CHRISTOPHER J. CARNEY
Commercial Litigation Branch         Senior Trial Attorney
Civil Division                       Commercial Litigation Branch
United States Department of Justice   Civil Division
PO Box 480                           U.S. Department of Justice
Ben Franklin Station                 P.O. Box 480
Washington, DC  20044                Ben Franklin Station
                                     Washington, D.C. 20044
                                     Tel:  (202) 305-7597
                                     Fax:  (202) 307-2503
                                     E-mail: chris.carney@usdoj.gov

July 27, 2016

                                     Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................... iii

FACTUAL BACKGROUND ...................................................................................... 3

ARGUMENT .............................................................................................................. 7

I.     Standards Of Review ....................................................................... 7

II.    The Court Does Not Possess Jurisdiction To Entertain
Plaintiffs' Claims ............................................................................ 8

    A.    The Court Does Not Possess Jurisdiction To Review
Or Overturn District Court Rulings ...................................... 8

        1.    This Court Does Not Possess Jurisdiction Because
The Remedy Sought Effectively Asks The Court
To Review And Reverse The Decisions Of
Judge Glasser ............................................................. 8

        2.    The Proper Forum For Challenging Sealing And
Sentencing Decisions In A Criminal Matter Is In
The District Court And The Court Of Appeals ........... 12

        3.    The Gottdieners' Requested Relief Would
Effectively Require The Court To Hold That
The District Court For The Southern District Of
New York Provided An Inadequate Forum
For Seeking Compensatory Relief Against
Mr. Sater .................................................................... 16

    B.    The Court Does Not Possess Jurisdiction Over Plaintiffs'
Illegal Exaction Claim Because The Statutes Upon Which
They Rely Expressly Disclaim A Right To Monetary Relief
Against The Government ...................................................... 19

III.    Plaintiffs' Complaint Fails To State Claims Upon Which
Relief May Be Granted .................................................................. 21

    A.    The Complaint Fails To Identify A Cognizable
Property Interest .................................................................. 21

1.      Congressional Intent Controls Whether A Statute
Creates A Property Interest..............................................................21

2.      The CVRA Explicitly States That It Does Not Create
A Cause of Action........................................................................24

B.     Plaintiffs' Takings Claim Is Invalid As It Appears To Be
Based On Allegedly Unauthorized Government Action Which
Cannot Form The Basis For A Taking...........................................28

C.     The Complaint Fails To State A Claim For An Illegal
Exaction Because The Government Has Not Received
Or Taken Money From the Gottdieners..........................................31

D.     Collateral Estoppel Bars Plaintiffs' Claims Because
The Issue Of Whether The Gottdieners Were Mr. Sater's
Victims Has Already Been Litigated In The Southern District
Of New York And The Second Circuit............................................33

CONCLUSION.................................................................................................38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*200,000 Towers Inv'rs Restitution Victims v. United States ex rel. U.S. Prob. Office New York City Staff Breach of Crime Victims Act,*
No. 13 CIV. 8563 PKC, 2013 WL 6673612 (S.D.N.Y. 2013) ................................................. 26

*Acadia Tech., Inc. v. United States,*
458 F.3d 1327 (Fed. Cir. 2006) ....................................................................................... 29, 30

*Acceptance Insurance Cos., Inc. v. United States,*
583 F.3d 849 (Fed. Cir. 2009) ................................................................................................ 21

*Adams v. United States,*
391 F.3d 1212 (Fed. Cir. 2004) ............................................................................... 26, 27, 37

*Aerolineas Argentinas v. United States,*
77 F.3d 1564 (Fed.Cir.1996) ..................................................................................... 19, 20, 33

*Air Pegasus of D.C., Inc. v. United States,*
424 F.3d 1206 (Fed. Cir. 2005) ............................................................................................ 21

*Alaji Salahuddin v. Alaji,*
232 F.3d 305 (2d Cir. 2000) .................................................................................................. 25

*Allustiarte v. United States,*
256 F.3d 1349 (Fed. Cir. 2001) ................................................................................... 9, 10, 11

*American Pelagic Fishing Co. v. United States,*
379 F.3d 1363 (Fed. Cir. 2004) ............................................................................................ 21

*AmeriSource Corp. v. United States,*
525 F.3d 1149 (Fed. Cir. 2008) ............................................................................................ 30

*Ammex, Inc. v. United States,*
334 F.3d 1052 (Fed. Cir. 2003) ............................................................................................ 35

*Andres v. United States,*
No. 03-2654, 2005 WL 6112616 (Fed. Cl. July 28, 2005) ................................................. 32, 33

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................................. 8

*Bath Iron Works Corp. v. United States,*
27 Fed. Cl. 114 (1992) .............................................................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................... 8

*Bennis v. Michigan*,
 516 U.S. 442 (1996) ................................................................................. 31

*Blaze Constr., Inc. v. United States*,
 27 Fed. Cl. 646 (1993) ............................................................................... 8

*Board of Regents of State Colleges v. Roth*,
 408 U.S. 564, (1972) ............................................................................... 24

*Bowman v. United States*,
 35 Fed. Cl. 397 (1996) ............................................................................ 33

*Chrysler Corp. v. Brown*,
 441 U.S. 281 (1979) ............................................................................ 24-25

*Conti v. United States*,
 291 F.3d 1334 (Fed. Cir. 2002) .......................................................... 22, 23

*Cooper v. Dep't of the Navy*,
 108 F.3d 324 (Fed. Cir. 1997) ................................................................ 35

*Copar Pumice Co., Inc.*,
 112 Fed. Cl., 515 (2013) ......................................................................... 33

*Cort v. Ash*,
 422 U.S. 66 (1975) .................................................................................. 25

*County of L.A. v. Davis*,
 440 U.S. 625 (1979) ................................................................................ 35

*Crocker v. United States*,
 125 F.3d 1475 (Fed. Cir. 1997) .............................................................. 20

*Cunningham v. United States Dep't of Justice*,
 961 F.Supp.2d 226 (D.D.C. 2013) .......................................................... 26

*Cunningham v. United States*,
 748 F.3d 1172 (Fed. Cir. 2014) .............................................................. 35

*Cyprus Amax Coal Co. v. United States*,
 205 F.3d 1369 (Fed. Cir. 2000) .............................................................. 19

iv

*Duncan v. United States*,
   446 F. App'x 303 (Fed. Cir. 2011) ................................................................. 14, 20

*Eastport S.S. Corp. v. United States*,
   178 Ct.Cl. 599, 372 F.2d 1002 (1967) ....................................................... 19, 31, 32

*Estate of Gottdiener v. Sater*,
   35 F. Supp. 3d 386 (S.D.N.Y) , *on reconsideration,* 35 F. Supp. 3d 402
   (S.D.N.Y 2014), *aff'd,* 602 F. App'x 552 (2d Cir. 2015).................................. *passim*

*Garrow v. Phillips*,
   664 F. Supp. 2 (D.D.C. 1987), *aff'd sub nom., Garrow v. Gramm,* 856 F.2d 203 (D.C.
   Cir. 1988)............................................................................................................ 23-24

*Gould, Inc. v. United States*,
   935 F.2d 1271 (Fed. Cir. 1991) ................................................................................ 8

*Gump v. United States*,
   482 F. App'x 588 (Fed. Cir. 2012) ........................................................................... 9

*Henke v. United States*,
   60 F.3d 795 (Fed. Cir. 1995) ................................................................................... 7

*Hernandez v. Dep't of Air Force*,
   498 F.3d 1328 (Fed. Cir. 2007) ............................................................................. 35

*Holley v. United States*,
   124 F.3d 1462 (Fed. Cir. 1997) ............................................................................... 7

*In re Applications to Unseal*
   *98 CR 1101 (ILG)*, 568 F. App'x 68 (2d Cir. 2014), *cert. denied sub nom., Palmer v.
   Doe,* 135 S. Ct. 1009, 190 L. Ed. 2d 839 (2015)................................................... 13

*In re Motion for Civil Contempt By John Doe*,
   No. 12-MC-0557 (BMC), 2016 WL 3460368 (E.D.N.Y. June 22, 2016) ................ 13

*Indium Corp. of America v. Semi-Alloys, Inc.*,
   781 F.2d 879 (Fed. Cir. 1985)................................................................................... 8

*Innovad Inc. v. Microsoft Corp.*,
   260 F.3d 1326 (Fed. Cir. 2001)......................................................................... 33, 37

*Innovair Aviation Ltd. v. United States*,
   632 F.3d 1336 (Fed. Cir. 2011) .......................................................................... 9, 14

*Ivaldy v. United States*,
123 Fed. Cl. 633 (2015), *aff'd*, No. 16-1350 (Fed. Cir. July 7, 2016) ..................................... 10

*Joshua v. United States*,
17 F.3d 378 (Fed. Cir. 1994) ........................................................................................... 9, 10

*Kam-Almaz v. United States*,
682 F.3d 1364 (Fed. Cir. 2012) ................................................................................ 8, 30, 31

*Kania v. United States*,
650 F.2d 264 (Ct. Cl. 1981) ................................................................................................. 12

*Karahalios v. National Fed'n of Fed. Employees, Local
1263*, 489 U.S. 527 (1989) ................................................................................................. 25

*Langenegger v. United States*,
756 F.2d 1565 (Fed. Cir. 1985) .......................................................................................... 29

*Lewis v. United States*,
99 Fed. Cl. 772 (2011) ......................................................................................................... 33

*Lindsay v. United States*,
295 F.3d 1252 (Fed. Cir. 2002) ............................................................................................ 8

*Lion Raisins, Inc. v. United States*,
416 F.3d 1356 (Fed. Cir. 2005) .......................................................................................... 30

*Lopez v. Kora*,
No. 3:12-CV-0510-M BK, 2012 WL 1242376 (N.D. Tex. Mar. 12, 2012) *report and
recommendation adopted,* 2012 WL 1242341 (N.D. Tex. 2012) ............................................. 26

*Martl v. United States*,
No. 09-299L, 2010 WL 369212 (Fed. Cl. Jan. 29, 2010) .................................................. 10, 11

*Milgrom v. United States*,
122 Fed. Cl. 779 (2015), *aff'd*, No. 15-5145, 2016 WL 3209574 (Fed. Cir. June 10,
2016) ..................................................................................................................................... 10, 11

*Milgrom v. United States*,
2016 WL 3209574 (Fed. Cir. June 10, 2016) ....................................................................... 11

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*,
723 F.2d 1566 (Fed. Cir. 1983) .......................................................................................... 33

*Norman v. United States,*
    429 F.3d 1081 (Fed. Cir. 2005) ..................................................................... 19, 31

*Paradissiotis v. United States,*
    304 F.3d 1271 (Fed. Cir. 2002) ........................................................................... 24

*Petro-Hunt, L.L.C. v. United States,*
    126 Fed. Cl. 367 (2016), *appeal docketed*, No. 16-1983 ....................................... 10

*Piszel v. United States,*
    121 Fed. Cl. 793 (2015), *appeal docketed*, No. 15-5100 (Fed. Cir. 2015) .............. 31

*Regional Rail Reorganization Act Cases,*
    419 U.S. 102 (1974) ............................................................................................ 28

*Reynolds v. Army & Air Force Exch. Serv.,*
    846 F.2d 746 (Fed. Cir. 1988) .............................................................................. 7

*Rith Energy, Inc. v. United States,*
    247 F.3d 1355 (Fed. Cir. 2001) ...................................................................... 29, 30

*Roe v. United States,*
    428 F. App'x 60 (2d Cir. 2011) ............................................................................ 12

*Sanders v. United States,*
    252 F.3d 1329 (Fed. Cir. 2001) ............................................................................ 12

*Shakur El-Bey v. Menefee,*
    No. 3:14-CV-47-WKW, 2014 WL 6633544 (M.D. Ala. Oct. 27, 2014) *report and
    recommendation adopted in part, rejected in part on other grounds,* 2014 WL 6633484
    (M.D. Ala. 2014) ............................................................................................ 25, 26

*Shinnecock Indian Nation v. United States,*
    782 F.3d 1345 (Fed. Cir. 2015) ............................................................................. 9

*Short v. United States,*
    50 F.3d 994 (Fed. Cir. 1995) ............................................................................... 28

*Sindram v. United States,*
    67 Fed. Cl. 788 (2005) ........................................................................................ 16

*Southern Cal. Fin. Corp. v. United States,*
    634 F.2d 521 (Ct. Cl. 1980) ................................................................................. 29

*Stanford v. United States,*
    125 Fed. Cl. 570 (2016), *appeal docketed*, No. 16-1990 (Fed. Cir. May 4, 2016) ................ 10

*Tabb Lakes, Ltd. v. United States*,
  10 F.3d 796 (Fed. Cir. 1993)......................................................................... 28

*Texas State Bank v. United States*,
  423 F.3d 1370 (Fed. Cir. 2005)..................................................................... 28

*The License Cases*,
  46 U.S. 504 (1847)......................................................................................... 31

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979)......................................................................................... 25

*Trusted Integration, Inc. v. United States*,
  659 F.3d 1159 (Fed. Cir. 2011)....................................................................... 7

*Underwood Livestock Inc. v. United States*,
  89 Fed. Cl. 287 (2009)................................................................................... 33

*United States v. Boccagna*,
  450 F.3d 107 (2d Cir. 2006)........................................................................... 16

*United States v. Fuller*,
  409 U.S. 488 (1973)........................................................................... 22, 23, 31

*United States v. Rands*,
  389 U.S. 121 (1967)....................................................................................... 31

*United States v. Rubin*,
  558 F. Supp. 2d 411 (E.D.N.Y. 2008)........................................................... 26

*United States v. Sater,*
  No. 98-cr-01101 (E.D.N.Y 2009).................................................................. 13

*United States v. Sherwood,*
  312 U.S. 584 (1941)......................................................................................... 7

*United States v. Testan,*
  424 U.S. 392 (1976)......................................................................................... 7

*United States v. Zangari,*
  677 F.3d 86 (2d Cir. 2012)............................................................................ 16

*Upton v. Fakhoury,*
  No. CIV S-10-3419 WBS, 2011 WL 3703364 (E.D. Cal. Aug. 23, 2011)............. 26

*Vereda, Ltda. v. United States*,
   271 F.3d 1367 (Fed. Cir. 2001) ........................................................................ 9, 10, 18

**Statutes**

18 U.S.C. § 1964 ............................................................................................................. 17

18 U.S.C. § 3664 ........................................................................................... 16, 19, 22, 37

18 U.S.C. § 3663A ............................................................................................... 2, 14, 25

18 U.S.C. § 3771 ....................................................................................................... *passim*

28 U.S.C. § 1346 ............................................................................................................. 16

**Legislative Materials**

Organized Crime on Wall St., 106-156, *Hearing Before the Subcomm. On Fin. and
   Hazardous Materials of the H. Comm. on Commerce*,
   106 Cong. 194-202 (2000) https://www.gpo.gov/fdsys/pkg/CHRG-
   106hhrg67115/pdf/CHRG-106hhrg67115.pdf (last visited July 6, 2016) ................................ 4

**Rules**

RCFC 12 ...................................................................................................... 1, 7, 8, 33

**Other Authorities**

73 C.J.S. Property § 13 .............................................................................................. 22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ESTATE OF ERNEST GOTTDIENER, ET. AL., | ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| v. | ) ) |
| | ) |
| THE UNITED STATES, | ) ) |
| | ) |
| Defendant. | ) |

No. 15-1245
Judge Wolski

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Rule 12(b)(1) and (6) of the Rules of the United States Court of Federal

Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the

first amended complaint of plaintiffs, Estate of Ernest Gottdiener, Estate of Judit Gottdiener,

Ervin Tausky, and Suan Investments (the Gottdieners). The Court does not possess jurisdiction

to entertain plaintiffs' complaint for several independently sufficient reasons to dismiss. First,

the Court does not possess subject matter jurisdiction to entertain the takings and illegal exaction

claims in their complaint because the relief they seek, namely money damages for the alleged

taking of the right to seek restitution in a criminal matter, would necessitate that this Court

review and effectively reverse the sentencing decision of the United States District Court for the

Eastern District of New York (E.D.N.Y.), which declined to impose an order of restitution in the

criminal case at issue. This Court, however, does not possess jurisdiction to reassess and

effectively overturn the district court's decision.

Second, although the Gottdieners allege that the Government deprived them of the

ability, as alleged victims, to sue Felix Sater for restitution, they did in fact bring a civil

Racketeer Influenced and Corrupt Organizations (RICO) suit in the United States District Court

for the Southern District of New York (S.D.N.Y.), seeking compensation for Mr. Sater's alleged

fraud against the Gottdieners.  The district court held that the Gottdieners were *not* victims of the crime for which Mr. Sater was convicted, and the United States Court of Appeals for the Second Circuit affirmed that decision.  Thus, this Court would need to review and effectively reverse those decisions as well to afford plaintiffs the relief they seek.  Yet, the Court does not possess jurisdiction to do so.

As an alternative to their takings claim, the plaintiffs contend that the Government illegally exacted from them a cause of action provided in particular statutes of the Federal criminal code (Title 18).  In particular, the Gottdieners base their claims upon the Crime Victims Rights Act (CVRA) (18 U.S.C. § 3771) and the Mandatory Victim Restitution Act (MVRA) (18 U.S.C. § 3663A).  These statutory provisions, however, expressly provide that they do not create actions for damages against the United States, and thus do not provide the necessary jurisdictional basis for an illegal exaction claim.  Therefore, the allegations in the complaint fail to establish this Court's jurisdiction.

Even if this Court should determine it possesses jurisdiction, the complaint fails to state a claim upon which relief can be granted.  As an initial matter, the Gottdieners have failed to identify a cognizable property interest that has been taken—a necessary predicate to asserting a valid takings claim.  The property interest which they claim was taken, a "chose in action created by 18 U.S.C. § 3771," does not actually exist, as expressly stated in the text of that very statute.  Moreover, the Court of Appeals for the Federal Circuit has held that a statutory right to be paid money, such as that asserted by the Gottdieners under the CVRA and the MVRA, does not constitute a cognizable property interest for purposes of a takings claim.

Furthermore, in order to state a viable takings claim in this Court, the allegations must be based upon authorized Government action.  Yet, plaintiffs allege that the Government (including

2

the district court) violated the law in denying them the opportunity to seek restitution in a criminal case. Plaintiffs' alternative claim of illegal exaction also fails because the plaintiffs do not and cannot plausibly allege that they paid money to the Government or that the Government withheld their money.

Finally, the Gottdieners's claims are barred by collateral estoppel, because last year the Second Circuit affirmed the S.D.N.Y. district court's dismissal of the civil action brought by the Gottdieners against Mr. Sater, rejecting allegations that his conviction was in connection with the aiding and abetting of the broker, Alfred Palagonia, who defrauded the Gottdieners. Accordingly, the Gottdieners' claims must fail because they are precluded from contending that Mr. Sater was convicted for defrauding the Gottdieners, which is an essential allegation of their complaint.

## FACTUAL BACKGROUND

The named plaintiffs in this case are Ernest and Judit Gottdiener, who are deceased and therefore appear through their estates. Compl. ¶ 23[1]. Also named as plaintiffs are Ervin Tausky, Ms. Gottdiener's surviving brother, and Suan Investments, "a foreign entity serving as a family investment vehicle." *Id*. at ¶¶ 24-25. The complaint refers to these plaintiffs collectively as "the Gottdieners" because of "their commonality of interest in recovering in respect of their losses." *Id*. at ¶ 26.[2]

The complaint alleges that plaintiffs were victims of an organized criminal conspiracy, which defrauded its victims collectively of at least $40 million. *Id*. at ¶¶ 40, 41, 66, 78.

---

[1]    "Compl." refers to the corrected first amended complaint filed by plaintiffs on June 9, 2016.

[2]    Unless otherwise noted, the facts described here are derived from the plaintiffs' complaint and are accepted as true solely for the sake of this motion to dismiss.

Specifically, the Gottdieners allege that their broker, Mr. Palagonia, who worked at D.H. Blair, defrauded them of $7 million as part of his role in a scheme involving "pump-and-dump" market manipulation, by which brokers sold worthless stocks to unsuspecting clients. *Id*. at ¶¶ 34-35. After selling the stocks to their own clients, the brokers would then sell their own undisclosed holdings for a profit, which had the effect of removing the artificial price support for the stock, thereby leaving the client-victims with little or nothing of value. *Id*. at ¶ 34. The complaint alleges that Mr. Palagonia admitted that the Gottdieners were among his victims. *Id*. at ¶ 37.

According to the complaint, Mr. Palagonia's securities fraud was part of a larger racketeering enterprise known as the "White Rock" conspiracy. *Id*. at ¶¶ 34-36. Among the other defendants who pled guilty to that conspiracy, as alleged in the complaint, were Felix Sater, Salvatore Lauria, and Gennady Klotsman. *Id*. at ¶ 41. Plaintiffs allege that these defendants pled guilty "in closed federal courtrooms in the Eastern District of New York," in November and December 1998. *Id.* The courtrooms were closed because certain individuals had agreed to cooperate and assist the Government in its prosecution of other members of the conspiracy. *Id*. at ¶ 42. Although plaintiffs allege the prosecutions were intended to be kept secret, their complaint also acknowledges that the convictions of Messrs. Sater, Lauria, and Klotsman were publicly announced by the United States Attorney's Office for the Eastern District of New York (USAO EDNY) in a March 2000 press release. *Id*. at ¶¶ 43-44. That press release is attached as Exhibit A to the first amended complaint.[3] Although these three

---

[3]     The Court can also take judicial notice that this press release was also published in a 2000 Congressional Hearing Report. *See Organized Crime on Wall St.: Hearing Before the Subcomm. On Fin. and Hazardous Materials of the H. Comm. on Commerce*, 106 Cong. 194-202 at 195 (2000) (https://www.gpo.gov/fdsys/pkg/CHRG-106hhrg67115/pdf/CHRG-106hhrg67115.pdf (last visited July 6, 2016). The fact that Mr. Sater's conviction was made public in 2000, undermines the allegations in the complaint that his conviction (as opposed to his cooperation)

defendants' pleas and convictions were made public, plaintiffs allege that the defendants' criminal dockets were kept hidden from the public and "both the government and at least one of these three convicted RICO felons were quick to take advantage of the concealment." *Id*. at ¶¶ 45-46.[4]

Plaintiffs filed a motion for restitution pursuant to the CVRA before Judge Glasser of the U.S. District Court for the Eastern District of New York, who had presided over the 19-defendant White Rock case (*United States v. Coppa, et. al.*) and was presiding over the separate sentencing proceeding of Mr. Palagonia.  In their motion, the Gottdieners claimed they were Federally-protected victims of the White Rock scheme and were entitled to an order of restitution for the losses they allegedly suffered from buying fraudulent stock from Mr. Palagonia. *Id*. at ¶ 38.  On December 11, 2012, based on a stipulation between the Government and the Gottdieners (for purposes of that proceeding only) that "the [Gottdieners'] losses caused by Alfred Palagonia's conspiracy to commit securities fraud total $1.3 million dollars," Judge Glasser issued an order of restitution in this amount. *Id*. at ¶ 39.  A1-2.[5]  Plaintiffs conclude that, "so it is settled that the Gottdieners were causally injured by Palagonia's crimes, and that his crimes were committed in the scope, and furtherance, of Sater's racketeering."  Complaint, ¶ 40.  Thus, their

---

was kept hidden.  Plaintiffs acknowledge that the press release was "a matter of public fact" but nonetheless claim it "was out of sight insofar as one would have to know it was there to find it." *See* Compl. at ¶ 81.

[4]     Paragraphs 47-56 contain allegations regarding Mr. Sater's post-conviction activities at a New York real estate firm, the Bayrock Group.  It does not appear that plaintiffs' allegations about Bayrock relate to their claims against the Government in this case, and thus they are not relevant and will not be addressed here.

[5]     "A__" refers to the page of the appendix accompanying this motion.

claims in this case are premised on the argument that Mr. Palagonia's crimes were connected to those of Mr. Sater.

Plaintiffs further opine that because Mr. Sater was "a ringleader in the 'White Rock' criminal enterprise" he was responsible for all the Gottdiener's losses "as a matter of restitution law" on a joint and several basis. *Id*. at ¶¶ 62-65. Yet, it is asserted in the complaint, no mention of restitution was made during Mr. Sater's sentencing proceedings in 2009. *Id*. at ¶ 66.

Plaintiffs' complaint further alleges that the Government, "with the imprimatur of the court, planned to, and then took all possible steps to, never reveal Sater's sentencing to the public" or to the White Rock victims. *Id.* at ¶ 73. This is alleged to have led to a taking because plaintiffs were deprived of their alleged right to be heard at Mr. Sater's sentencing regarding restitution and to petition the court of appeals for a writ of mandamus following sentencing. *Id*. at ¶ 84. The taking allegedly occurred because the victims had a vested right to be told of Sater's sentencing and to sue to force an order of restitution. *Id*. at ¶ 74. The "concealment" of Mr. Sater's sentencing is therefore alleged to have taken "the choses in action" that the victims were entitled to bring for restitution. *Id*. at ¶ 84. In the alternative, the complaint alleges that the Government (including the judiciary) illegally exacted their choses in action by concealing the conviction and sentencing of Mr. Sater and thus depriving them of the right to seek restitution. *Id*. at ¶¶ 27, 84, 86. The complaint further alleges that plaintiffs "expect to introduce evidence that will cause this court to find that this concealment was done to aid in the recruitment of cooperators and in furtherance of the government's claimed dependence upon them to effectuate law enforcement." *Id.* at ¶ 85.[6]

---

[6]     Somewhat confusingly, plaintiffs assert that they "disagree with this ultimate fact,' which they expect to prove to the court with evidence. Complaint at ¶ 85.

ARGUMENT

I.      Standards of Review

It is well settled that this Court is one of limited jurisdiction.  *Bath Iron Works Corp. v. United States*, 27 Fed. Cl. 114, 122 (1992), *aff'd*, 20 F.3d 1567 (Fed. Cir. 1994).  Its authority to grant relief against the United States is limited by the extent to which the United States has waived sovereign immunity.  *United States v. Testan*, 424 U.S. 392, 399 (1976).  "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *Id.* at 399 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  "[I]n a Court of Claims context . . . waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  *Id.* at 399 (citations omitted).

In addressing a RCFC 12(b)(1) motion, "determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted).  The Gottdieners, "as the plaintiff[s], bear the burden of establishing the court's jurisdiction over [their] claims by a preponderance of the evidence."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).  In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), however, the Court may consider

7

evidentiary matters outside the pleadings.  *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

RCFC 12(b)(6) authorizes dismissal of a complaint if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law.  *See Lindsay v. United* States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  In ruling upon a 12(b)(6) motion to dismiss, the Court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff.  *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  However, "[l]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness."  *Blaze Constr., Inc. v. United States,* 27 Fed. Cl. 646, 650-651 (1993) (citation omitted).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Kam-Almaz v. United States*, 682 F.3d 1364, 1367-68 (Fed. Cir. 2012) (same).

II.     The Court Does Not Possess  Jurisdiction To Entertain Plaintiffs' Claims

     A.     The Court Does Not Possess Jurisdiction
         To Review Or Overturn District Court Rulings

          1.     This Court Does Not Possess Jurisdiction Because
             The Remedy Sought Effectively Asks The Court
             To Review And Reverse The Decisions Of Judge Glasser

The fundamental premise of the Gottdiener's complaint is that the Department of Justice, through the EDNY USAO, in concert with the Federal judiciary—in particular Judge Glasser— collaborated to conceal Felix Sater's conviction and sentencing, thereby taking or illegally exacting the plaintiffs' alleged right to seek restitution from Mr. Sater.  *See e.g.*, Complaint ¶¶

74-84.  Though plaintiffs frame their complaint as independent causes of action for a taking or

illegal exaction, the remedy they seek—damages for the value of their right to seek restitution—

effectively asks this Court to reverse Judge Glasser's decision not to notify the Gottdieners and

other alleged victims of Mr. Sater's sentencing hearing, not to order restitution, and to seal the

record of Mr. Sater's sentencing.  This is so because the relief plaintiffs seek is the relief Judge

Glasser declined to impose.

      The Court of Federal Claims does not possess jurisdiction to review and effectively

reverse Judge Glasser's decision not to include a restitution order or to notify purported victims

to Mr. Sater's sentencing.  Nor does the Court possess such jurisdiction concerning Judge

Glasser's decision to seal the criminal proceedings.  As the Court of Appeals for the Federal

Circuit has definitively stated:  "Binding precedent establishes that the Court of Federal Claims

has no jurisdiction to review the merits of a decision rendered by a federal district court."

*Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015) (*citing Innovair*

*Aviation Ltd. v. United States*, 632 F.3d 1336, 1343 (Fed. Cir. 2011); *Allustiarte v. United States*,

256 F.3d 1349, 1352 (Fed. Cir. 2001); *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed.

Cir. 2001); *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)).  Moreover, this Court

"has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code."

*Joshua* 17 F.3d at 379 (quoting trial court decision in summary affirmance ruling); *Gump v.*

*United States*, 482 F. App'x 588, 590 (Fed. Cir. 2012) (quoting *Joshua*).

      As specifically applicable to the claims in plaintiffs' complaint, the Federal Circuit has

unequivocally held that this Court may not entertain takings claims that require reviewing the

merits of district court decisions.  *Shinnecock Indian Nation*, 782 F.3d at 1352 ("Adjudication of

the [plaintiff's] proposed judicial takings claim would require the Court of Federal Claims to

scrutinize the merits of the district court's judgment, a task it is without authority to undertake."); *see also Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367, 382 (2016) ("[T]he Court of Federal Claims and the Federal Circuit have rejected a variety of claims that required the court to review the decisions of another federal tribunal in a takings context.") (collecting cases), *appeal docketed*, No. 16-1983 (Fed. Cir. May 4, 2016); *Stanford v. United States*, 125 Fed. Cl. 570, 574 (2016) ("The court, however, does not have jurisdiction to adjudicate the enforcement authority of the SEC nor the decisions of a United States District Court."), *appeal docketed*, No. 16-1990 (Fed. Cir. May 4, 2016); *Ivaldy v. United States*, 123 Fed. Cl. 633, 636 (2015) ("The Federal Circuit has consistently held that this court cannot hear a takings claim that requires review of another court's decision") (citing *Vereda*, *Allustiarte*, and *Joshua*), *aff'd*, No. 16-1350 (Fed. Cir. July 7, 2016); *Milgroom v. United States*, 122 Fed. Cl. 779, 801 (2015) (holding that court has no authority to review judicial takings claim that requires scrutiny of other federal courts' decisions) (collecting cases), *aff'd*, No. 15-5145, 2016 WL 3209574 (Fed. Cir. June 10, 2016) (unpublished); *Martl v. United States*, No. 09-299L, 2010 WL 369212, at *2 (Fed. Cl. Jan. 29, 2010) (unpublished) ("It is to no avail that plaintiff describes her suit as a takings claim-this court has no jurisdiction over takings claims that are founded on a challenge to the judgment of another federal court. ").

Plaintiffs state in their amended complaint that "importantly, this court *is not* being asked to overrule Judge Glasser or second-guess his sentencing order . . . or review the merits of what he ordered." Compl. at ¶ 103 (emphasis in original). However, in the immediately preceding paragraphs, plaintiffs assert that they plan to request that this Court divine what the district court and the Second Circuit would have done with respect to restitution if the plaintiffs had appeared at Mr. Sater's sentencing hearing. *Id*. at ¶¶ 100-102 ("If the court had ignored [a victim] and he

10

timely sought a writ of mandamus from the Second Circuit, *what would that court have done? That's what this trial is going to help us all find out*.") (emphasis added).  Plaintiffs also assert that the Court is not "being asked to review the merits of any sealing decision, only to review the liability for any taking that resulted from such."  *Id*. at 105.  Yet, there is no conceivable way that the Court could award plaintiffs monetary compensation for the alleged taking of their right to seek restitution without opining on whether the district court erred in not opening up Mr. Sater's sentencing hearing to plaintiffs or including an order of restitution in his sentence.  The Federal Circuit recently rejected a similar attempt by plaintiffs to recharacterize a complaint as something other than a collateral attack on another court, so as to avoid dismissal:

> The Appellants attempt to couch their allegations in terms of a Fifth Amendment taking by the district court, but the Claims Court could not review those allegations without second-guessing the merits of the district court and bankruptcy court decisions.  Thus, the true nature of the Appellants' claims is a collateral attack on the final judgments of the district court and bankruptcy court.  The Claims Court does not possess jurisdiction to entertain them. *Pines Residential Treatment Ctr., Inc. v. United States*, 444 F.3d 1379, 1380 (Fed. Cir. 2006) ("Regardless of a party's characterization of its claim, we look to the true nature of the action in determining the existence or not of jurisdiction.")

*Milgroom*, 2016 WL 3209574, at *4 (Fed. Cir. June 10, 2016); *aff'g*, *Milgroom*, 122 Fed. Cl. at 801 ("Although plaintiffs argue that 'filing this Complaint in the U.S. Court of Federal Claims is not a collateral attack of the Defendant's null and void Judgments,' there is no other manner of interpreting their claims."); *see also Allustiarte*, 256 F.3d at 1351-52 (noting that despite plaintiffs' claims that they were not asking the court to review the bankruptcy courts' judgments, the determination plaintiffs sought "would require the court to scrutinize the actions of the bankruptcy trustees and courts."); *Martl*, 2010 WL 369212, at *2 ("Plaintiff repeatedly asserts

that she is not bringing a collateral attack against the judgment entered by the district court in

Hawaii . . . . Unfortunately for plaintiff's argument, there is no other interpretation of her suit.").

Here, to adjudicate plaintiffs' claims would require the Court to review both the district

court's decision to seal criminal proceedings and the district court's purported failure to not

invite victims to Mr. Sater's sentencing hearing or to order him to pay restitution as part of his

sentence. However, "[i]t is particularly unreasonable to suppose that Congress in enacting the

Tucker Act intended for this court to intervene in the delicate and sensitive business of

conducting criminal trials." *Sanders v. United States*, 252 F.3d 1329, 1335-36 (Fed. Cir. 2001)

(quoting *Kania v. United States*, 650 F.2d 264, 269 (Ct. Cl. 1981)).

> 2. The Proper Forum For Challenging Sealing And Sentencing Decisions
> In A Criminal Matter Is In the District Court And The Court Of Appeals

The proper forum for challenging Judge Glasser's decisions is in the United States Court

of Appeals for the Second Circuit. In fact, plaintiffs' counsel did already challenge the propriety

of the sealing of Mr. Sater's records in the Second Circuit and that court upheld those decisions

after conducting its own review of the material in question:

> After an item-by-item review of the specific information
> that Roe wished to publicly release—including (a) John Doe's real
> name, linked with his criminal docket number, (b) the specific
> nature of the predicate acts leading to his criminal conviction, and
> (c) the sentence imposed by the District Court—Judge Cogan
> concluded that the information either was not public at all or was
> not public to the extent and with the level of detail that Roe
> intended to disclose. Accordingly, he denied Roe's request for
> permission to release the information. Order, United States v. Doe
> (E.D.N.Y. May 13, 2011). *Upon our own independent review*, we
> agree with Judge Cogan that Roe's proposed disclosures would
> have violated our temporary injunction of February 14, 2011 *and
> the sealing orders of Judge Glasser*.

*Roe v. United States*, 428 F. App'x 60, 68 (2d Cir. 2011), *cert. denied*, 133 S.Ct. 1631 (2013) (emphasis added).[7]

Likewise, for the Court to conclude that plaintiffs are owed compensation for being denied the opportunity to petition for restitution from Mr. Sater, it would need to review the district court's judgment in a criminal case. Here, the district court specifically found in its October 23, 2009 judgment in Mr. Sater's criminal case that restitution was "not applicable." *See* Judgment in a Criminal Case, *United States v. Sater*, (No. 98-cr-01101) (filed E.D.N.Y. Oct. 26 2009), ECF No. 35 at 4 (A3-7); *see also* Minute Entry for Sentencing Proceeding, *United States v. Sater*, (No. 98-cr-01101) (filed E.D.N.Y. Oct. 23 2009), ECF No. 34 (A8) (indicating

---

[7]     Pseudonyms were used to identify both plaintiff's counsel and Mr. Sater in order to protect the latter's identity and the fact of his cooperation. Subsequently, the clerk's office in the Eastern District of New York inadvertently released Mr. Sater's identity and his status as a cooperating witness. *See In re Applications to Unseal 98 CR 1101(ILG)*, 568 F. App'x 68, 69 (2d Cir. 2014), *cert. denied sub nom.*, *Palmer v. Doe*, 135 S. Ct. 1009, 190 L. Ed. 2d 839 (2015). Even after the inadvertent disclosure, the Second Circuit upheld Judge Glasser's decision to continue sealing certain documents, finding: "here, the District Court laid out each document that was to remain sealed in a series of tables and noted for each the basis for continued sealing. Where possible, it limited the sealing to redactions on certain pages. We have reviewed the District Court's sealed order. Given the extent and gravity of Sater's cooperation, we conclude that these findings are sufficient." *In re Applications to Unseal 98 CR 1101(ILG)*, 568 F. App'x at 70.

        In effect, this Court would also need to review the merits of the Second Circuit's decision as well to conclude that Mr. Sater's proceedings were improperly sealed. Indeed, in a subsequent civil suit the District Court for the Southern District of New York recognized that "the enforcement of Judge I. Leo Glasser's sealing orders in the criminal cases and the eventual unsealing of the documents in question were exhaustively litigated before Judges Glasser and Brian Cogan in the Eastern District of New York as well as multiple times in the Second Circuit." *Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 391 (S.D.N.Y.) *on reconsideration*, 35 F. Supp. 3d 402 (S.D.N.Y. 2014) *and aff'd*, 602 F. App'x 552 (2d Cir. 2015). Recently, in a related matter, Judge Cogan issued an additional order regarding the continued sealing and unsealing of certain documents (and the unsealing of others) regarding Mr. Sater's criminal case. *See In re Motion for Civil Contempt By John Doe*, No. 12-MC-0557 (BMC), 2016 WL 3460368 (E.D.N.Y. June 22, 2016).

13

"no restitution").[8]  The award of "compensation" that the Gottdieners seek would effectively

reverse Judge Glaser's decision that restitution was not applicable to Mr. Sater.  Accordingly, the

Gottdieners' suit represents a collateral attack on the district court's decision not to conduct

restitution proceedings.  Such attacks are outside the jurisdiction of this Court.  *See Innovair*

*Aviation Ltd.*, 632 F.3d at 1344-45 (reversing trial court, because consideration of plaintiff's

claims "necessarily involves a collateral attack on the [district court's]" approval of a substitute

*res* bond as constituting the fair value of plaintiff's property).  This Court is without the authority

to review whether Judge Glaser correctly determined that restitution was not applicable to Mr.

Sater, or to effectively reverse Judge Glaser's decision by awarding the monetary equivalent of

either the restitution he declined to order or the supposed value of the right to seek restitution

that Judge Glaser is alleged to have improperly denied the Gottdieners.

Indeed, the proper forum for seeking restitution (or appealing its denial) is in the district

court (and Court of Appeals for the Second Circuit).  *See Duncan v. United States*, 446 F. App'x

303, 305 (Fed. Cir. 2011) ("[T]o the extent that [plaintiff] is seeking to enforce certain rights to

victims outlined in the Crime Victims' Rights Act, the proper forum for enforcing those rights is

---

[8]      The MVRA affords the district court discretion to not award restitution in certain cases
involving fraud.  Specifically, section 3663A provides that the mandatory restitution provisions
do not apply if the district court determines that "the number of identifiable victims is so large as
to make restitution impracticable"; or that "determining complex issues of fact related to the
cause or amount of the victim's losses would complicate or prolong the sentencing process to a
degree that the need to provide restitution to any victim is outweighed by the burden on the
sentencing process."  18 U.S.C. § 3663A(c)(3).  It is unclear from the public record whether the
district court made any such findings with respect to Mr. Sater, but whether the district court
properly exercised its discretion is not subject to review in this Court.  Furthermore, section 3664
provides that "if the court finds that more than 1 defendant has contributed to the loss of a
victim, the court may make each defendant liable for payment of the full amount of restitution or
may apportion liability among the defendants to reflect the level of contribution to the victim's
loss and economic circumstances of each defendant."  *Id*. at § 3664(h).  Thus, the statute affords
the district court discretion in assigning restitution among co-defendants.

not the Court of Federal Claims but instead 'the district court . . . .'") (quoting 18 U.S.C. § 3771(d)(3). The CVRA specifically provides that a victim's rights—including the right to restitution (*see* 18 U.S.C. § 3771(a)(6))—"shall be asserted in the district court in which a defendant is being prosecuted for the crime *or, if no prosecution is underway, in the district court in the district in which the crime occurred*."  18 U.S.C. § 3771(d)(3) (emphasis added).

Thus, even if a crime victim mistakenly believed no prosecution was ongoing, the statute provides an opportunity to be heard.  Moreover, in this case, the Gottdieners acknowledge in their complaint that Mr. Sater's conviction (as opposed to his cooperation) was publicized in 2000.  *See* Compl. at ¶ 44 ("That press release . . . generally described the White Rock organized criminal enterprise, named the 19 persons arrested, and, importantly, stated—by name—that Sater, Lauria, and Klotsman had already pled guilty for their roles in the scheme.")  This acknowledgment undermines the allegation that the secrecy of subsequent court proceedings precluded putative victims from petitioning the district court for restitution.

Once a crime victim files a motion asserting his or her rights, district courts are required to decide it "forthwith."  18 U.S.C. § 3771(d)(3).  If the district court denies the purported victim's motion, "the movant may petition the court of appeals for a writ of mandamus".  The court of appeals is required to decide such a petition within 72 hours.  *Id*.  Thus, Congress has plainly vested jurisdiction for claims seeking to assert victim's rights in the district courts and the regional circuits.

Finally, aside from challenging Judge Glasser's orders related to sealing and restitution, the complaint also appears to challenge the actions of Department of Justice prosecutors handling Mr. Sater's case based upon the CVRA.  However, although the CVRA recognizes that crime victims are entitled to certain rights, it expressly provides that "nothing in this chapter

15

shall be construed to impair the prosecutorial discretion of the Attorney General or any officer

under his direction." 18 U.S.C. § 3771(d)(6).  Moreover, to the extent the complaint is alleging

wrongful conduct against specific Government employees, the Court does not possess

jurisdiction to entertain such claims.  "Alleged wrongful conduct by governmental officials in

their official capacity are tort claims over which the United States Court of Federal Claims does

not have jurisdiction." *Sindram v. United States*, 67 Fed. Cl. 788, 792 (2005) (citing 28 U.S.C.

§ 1346(b)).

3.     The Gottdieners' Requested Relief Would Effectively
       Require The Court To Hold That The District Court For The
       Southern District of New York Provided An Inadequate
       Forum For Seeking Compensatory Relief Against Mr. Sater

Even if the Gottdieners's complaint were to somehow not be construed as a collateral

attack on Judge Glasser's sentencing decisions in a criminal matter, the complaint still lies

outside this Court's jurisdiction.  The Gottdieners repeatedly assert in their complaint that the

actions of the Government took their right to sue Felix Sater for restitution. *See e.g.*, Compl. ¶¶

6, 84, 104, 106, 110  Yet, they were in fact able to sue Felix Sater for compensatory damages—

the equivalent of the opportunity to seek restitution they claim to have been denied[9]—in the

United States District Court for the Southern District of New York. *See Estate of Gottdiener v.*

---

[9]     The Second Circuit—the Circuit in which both Mr. Sater's criminal prosecution and the
Gottdieners' civil suit against him took place—has recognized that "the purpose of restitution is
essentially compensatory . . . ." *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012)
(quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)).  18 U.S.C. section 3664,
which contains the procedures for the issuance and enforcement of restitution orders, specifically
provides that "any amount paid to a victim under an order of restitution shall be reduced by any
amount later recovered as compensatory damages for the same loss by the victim in . . . any
Federal civil proceeding . . . ." 18 U.S.C. § 3664(j)(2).  Thus, had the Gottdieners successfully
recovered against Mr. Sater in their civil suit, any order of restitution resulting from the chose in
action they allege was taken or exacted would have been reduced to reflect the outcome of their
civil suit.

*Sater*, 35 F. Supp. 3d 386, 394-95 (S.D.N.Y.), *on reconsideration,* 35 F. Supp. 3d 402 (S.D.N.Y.

2014) and *aff'd,* 602 F. App'x 552 (2d Cir. 2015).

The district court dismissed the Gottdieners' civil suit against Mr. Sater for failure to

state a claim.  *See Estate of Gottdiener*, 35 F. Supp. 3d at 402.  The primary ground for

dismissing the complaint was that Mr. Sater's was "not convicted 'in connection with' aiding

and abetting Palagonia's securities fraud," and thus could not fall within the so-called

"conviction exception" to civil RICO actions predicated on securities fraud.  *Id*. at 394-95.  This

exception requires that in order to allege securities fraud as a predicate act in a civil RICO case,

the defendant must have been convicted in connection with such fraud.  *See* 18 U.S.C. 1964(c).

The district court then denied the Gottdieners leave to amend their complaint because "the facts

concerning the scope of Defendants' convictions will not change to bring them within the

conviction exception to RICO's securities fraud bar."  *Id*. at 401-02 ("The scope of Defendants'

convictions is determined by the criminal Informations to which they pleaded guilty and which

are appended to the Complaint before the Court.  Those Informations do not tie Defendants to

Palagonia's sales to Plaintiffs."); *see also Estate of Gottdiener* (on reconsideration), 35 F.Supp.

3d. at 405 (denying motion for reconsideration that argued the Gottdieners could amend the

complaint to allege primary securities fraud by Sater—instead of aiding and abetting

Palagonia—because "as the Court stands by its finding that the conviction exception is

inapplicable to the facts as alleged, repleading as Plaintiffs propose would be futile.").  [10]

---

[10]     Thus, while the district court also dismissed the Gottdieners' suit on the ground that
aiding and abetting securities fraud could not serve as a predicate act in a Civil RICO suit, the
court recognized that the suit still would fail if the Gottdieners had alleged that Mr. Sater had
directly defrauded them.  *See Estate of Gottdiener* (on reconsideration), 35 F.Supp. 3d. at 405.

17

In short, the Gottdieners already had and exercised the opportunity to sue in Federal court for compensation for their alleged losses attributable to Mr. Sater's stock fraud. Although they did not succeed because the district court found that Mr. Sater was not convicted of defrauding the Gottdieners, the Gottdiener's election and ability to sue elsewhere for compensation defeats their complaint before this Court, as the claim they bring here is that the Government purportedly deprived them of the opportunity to seek such compensation from Mr. Sater. *See e.g.*, Complaint at ¶ 6 (alleging that hidden nature of cases deprived victims of "their rights to sue" for restitution). For the Court to hold here that the Gottdieners were deprived of their right to pursue compensation from Mr. Sater, the Court would need to find that the S.D.N.Y.—which ruled on the Gottdieners's civil RICO claim, specifically considered Mr. Sater's conviction in the E.D.N.Y., and was affirmed by the Second Circuit— erred in finding that Mr. Sater had not been convicted of defrauding the Gottdieners, and provided an inadequate forum for the Gottdieners to seek compensation. The Court does not possess such jurisdiction. *See Vereda, Ltda.,* 271 F.3d at 1375 ("The Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal.") (citations omitted).[11]

---

[11]     In their amended complaint, the Gottdieners assert that because of the conviction exception the legal standard is different under a civil RICO suit than that required to obtain restitution in a criminal proceeding. *See* Compl. at ¶ 107. They make this assertion without citation or explanation as to why the burden of proof would be lower in a criminal matter. Putting that aside, the district court also found that the Gottdieners claims against Mr. Sater had to be dismissed because they failed to plead that their broker Mr. Palagonia had committed any fraud against them based upon actions taken by Mr. Sater. *See Estate of Gottdiener*, 35 F. Supp. 3d at 398-99 ("Indeed, in the entirety of the Complaint, Defendant Sater is never mentioned in relation to any payment to Palagonia.").

B.   The Court Does Not Possess Jurisdiction Over Plaintiffs' Illegal
     Exaction Claim Because The Statutes Upon Which They Rely
     Expressly Disclaim A Right To Monetary Relief Against The Government

The Court lacks jurisdiction to entertain the Gottdiener's alternative reliance upon a

purported illegal exaction theory for additional reasons unique to such claims.  The Gottdieners

plead in the alternative that the Government illegally exacted from them "a chose in action

created by 18 U.S.C. § 3771."  Compl. at ¶¶ 3, 86, 118-19.  "An 'illegal exaction," as that term is

generally used, involves money that was 'improperly paid, exacted, or taken from the claimant in

contravention of the Constitution, a statute, or a regulation.'"  *Norman v. United States*, 429 F.3d

1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372

F.2d 1002, 1007 (1967)).  Although normally this Court does not possess jurisdiction to entertain

due process claims under the Tucker Act, the Court "has been held to have jurisdiction over

illegal exaction claims 'when the exaction is based upon an asserted statutory power.'"  *Norman*,

429 F.3d at 1095 (quoting *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573

(Fed.Cir.1996)).  *Norman* further requires that "to invoke Tucker Act jurisdiction over an illegal

exaction claim, a claimant must demonstrate that the statute or provision causing the exaction

itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation

entails a return of money unlawfully exacted.'"  429 F.3d at 1095 (quoting *Cyprus Amax Coal

Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).

In *Norman*, the Federal Circuit held that the statute there at issue "does not, by its terms

or by necessary implication, provide a cause of action with a monetary remedy for its violation."

429 F.3d at 1096.  Likewise, here—far from expressly or impliedly providing a cause of action

against the United States—the two statutes relied upon by the Gottdieners for their illegal

exaction claim, *expressly* state that they do *not* provide a right to seek money damages against

19

the United States.  *See* 18 U.S.C. § 3664(p) ("Nothing in this section or section . . . 3663A . . .
shall be construed to create a cause of action not otherwise authorized in favor of any person
against the United States or any officer or employee of the United States."); *id*. at § 3771(d)(6)
("Nothing in this chapter shall be construed to . . .  create, to enlarge, or to imply any duty or
obligation to any victim or other person for the breach of which the United States or any of its
officers or employees could be held liable in damages."); *see also Duncan v. United States*, 446
F. App'x 303, 305 (Fed. Cir. 2011) ("Based on the plain language of the Act, we agree with the
Court of Federal Claims that it does not have jurisdiction to address this claim.  Section
3771(d)(6) of the Act clearly states that the Crime Victims' Rights Act does not create a cause of
action against the United States for money damages.").  Thus, there is no Tucker Act jurisdiction
for plaintiffs' illegal exaction claim.

Moreover—putting aside for the moment the fact that the statutes do not create a cause of
action for the payment of money—the Federal Circuit has held that "the Tucker Act provides
jurisdiction in the Court of Federal Claims to recover 'exactions said to have been illegally
imposed by federal officials (*except where Congress has expressly placed jurisdiction
elsewhere*).'"  *Crocker v. United States*, 125 F.3d 1475, 1477 (Fed. Cir. 1997) (quoting
*Aerolineas Argentinas* 77 F.3d at 1572-1573) (emphasis added).  Here, Congress has
unambiguously vested jurisdiction over the enforcement of these criminal sentencing statutes –
and the provision of the restitution plaintiffs seek -- in the United States District Courts.  More
specifically, Congress has expressly mandated that a putative crime victim assert his rights,
including the rights to be involved in proceedings and to obtain restitution, in the district court
where the prosecution is occurring.  *See* 18 U.S.C.A. § 3771(d)(3) ("The rights described in [the
CVRA] shall be asserted in the district court in which a defendant is being prosecuted for the

20

crime . . . . If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus."). As such, the Court cannot exercise jurisdiction over the Gottdieners' illegal exaction claims for this additional reason.

III.    Plaintiffs' Complaint Fails To State Claims Upon Which Relief May Be Granted

Alternatively, plaintiffs' complaint should be dismissed because, for several, independently sufficient reasons, plaintiffs have failed to state a claim upon which relief may be granted.

A.    The Complaint Fails To Identify A Cognizable Property Interest

1.    Congressional Intent Controls Whether A Statute Creates A Property Interest

Courts apply a two-part test when evaluating whether governmental action constitutes a taking without just compensation. "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'" *Acceptance Insurance Cos., Inc. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009) (collecting Federal Circuit cases). In doing so, courts "do not reach this second step without first identifying a cognizable property interest." *Id*. (quoting *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005)). "If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court's task is at an end." *American Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004).

In this case, the Gottdieners assert that they had a property interest in the alleged right to seek restitution from Mr. Sater under the CVRA and that this right was taken because the Government imposed a secrecy order that prevented them from pursuing their restitution claim against Mr. Sater. *See e.g.*, Complaint ¶ 3 ("That property which Plaintiffs' complaint was

21

compensably taken from them (or, in the alternative, illegally exacted from them) is a chose in action[12] created by 18 U.S.C. § 3771").  As we demonstrate, however, the right to seek restitution they claim was taken, is not a property right protected by the Fifth Amendment. Therefore, they have failed to state a claim for which relief can be granted under the Fifth Amendment.

The Federal Circuit, relying upon Supreme Court precedent, has held that no property interest is created by a statute when Congress has in the language of the statute itself disclaimed the creation of such a right.  *See Conti v. United States*, 291 F.3d 1334, 1340 (Fed. Cir. 2002) (no property right created when statutory language makes "clear the congressional intent that no compensable property be created in the permit lands themselves as a result of the permit.") (quoting *United States v. Fuller*, 409 U.S. 488, 494 (1973)).  Congress has disclaimed that the restitutionary statutes cited by the Gottdieners supply their alleged compensable property interest - choses in action.  Both the MVRA and the CVRA expressly provide that the statutes create no right of action against the United States.  *See* 18 U.S.C. § 3664(p); *id*. at § 3771(d)(6). Moreover, the CVRA—the statute upon which the Gottdieners chiefly rely—provides that it does not authorize a cause of action against <u>anyone</u>.  *Id*. at § 3771(d)(6).

Thus, much like the statutory language at issue in *Fuller* and *Conti*, the language in the CVRA and the MVRA makes clear that Congress did not intend to create a compensable

---

[12]     "A cause of action to recover money in damages is a chose in action . . . ."  73 C.J.S. Property § 13.  The Gottdieners do not appear to suggest in their complaint that there is any distinction between a cause of action that section 3771 expressly disclaims, and the chose in action they allege was taken.  In fact, the Gottdieners appear to equate the two terms in their complaint.  *See* Compl. at ¶ 108 ("[T]he argument that because the CVRA says it does not create a cause of action is pointless because the Fifth Amendment created it the moment the chose of action came into being; Congress cannot create a property interest and at the same time then say it is not subject to taking.").

property right in those claiming to be victims under the statute. *See Fuller*, 409 U.S. at 489

(statute providing "that its provisions 'shall not create any right, title, interest, or estate in or to

the lands.'" (citations omitted); *Conti*, 291 F.3d at 1342 (statute stating that it "shall not create

any right, title, or interest in or to any fish."). In *Fuller*, after recognizing the Congressional

intent not to create a property interest in the permits issued under the statute at issue, the

Supreme Court observed that "it would be unusual, we think, for Congress to have turned around

and authorized compensation" under that same statute, as the plaintiffs had urged. 409 U.S. at

494. The same reasoning applies here. It would be unusual for Congress to explicitly provide

that the CVRA does not authorize a cause of action, create or imply any duty or obligation that

can be enforced against the Government, or permit the United States to be held liable for a

breach of any obligations under the CVRA, while implicitly allowing plaintiffs to circumvent

those restrictions by creating a property interest that can be asserted in a takings case against the

Government.

The Gottdieners claim that the Congressional intent to not create a property interest is

irrelevant. *See Compl.* at ¶ 108 ("[T]he argument that because the CVRA says it does not create

a cause of action is pointless because the Fifth Amendment created it the moment the chose of

action came into being; Congress cannot create a property interest and at the same time then say

it is not subject to taking."). Yet, as the Supreme Court and Federal Circuit precedent cited

above demonstrates, it the prerogative of Congress to decide whether a statute it has enacted

confers a property interest. Thus, the Gottdieners are "incorrect in suggesting that the intent of

the legislature is irrelevant in determining whether a particular statute confers a property interest.

As the Supreme Court has repeatedly stated, 'Property interests are not created by the

Constitution. Rather they are created and their dimensions defined by existing rules or

23

understandings that stem from an independent source such as state law . . . ."  *Garrow v. Phillips*, 664 F. Supp. 2, 5 (D.D.C. 1987), *aff'd sub nom. Garrow v. Gramm*, 856 F.2d 203 (D.C. Cir. 1988) (*quoting Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, (1972)).[13]

## 2. The CVRA Explicitly States That It Does Not Create A Cause Of Action

Putting aside that Congress did not intend to create a property interest in the criminal statutes upon which the Gottdieners rely, the Gottdieners' claims are further doomed by the fact that the chose in action that they claim the Government has taken, does not actually exist.  The Gottdieners' entire case rests upon the faulty premise that they possess a chose in action giving them the right to seek restitution from Mr. Sater that was created by section 3771.  *See* Compl. at 3 ("The property which Plaintiffs' complain was compensably taken from them (or was illegally exacted from them) *is a chose in action created by 18 U.S.C. § 3771*.") (emphasis added). However, there is no such chose in action, so there was nothing that the Government could take. In essence, the Gottdieners' claim is analogous to a hypothetical land takings case in which the plaintiff not only did not possess a property interest in land, but the land itself was non-existent.

The Supreme Court has noted that the "Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for

---

[13]     Thus, the Gottdieners' theory that they possessed an "embedded option" fares no better. *See e.g.*, Complaint at ¶ 19.  While plaintiffs compare what they claim to possess to a stock option contract, in the latter situation the owner of such stock option contracts actually possesses a written instrument provided to them by a corporation.  Here, the Gottdieners possess no such instrument.  Furthermore, even those deprived of actual option contracts (unlike here) do not possess a valid takings claim if the value of the contract was eliminated due to actions taken by the Government in its sovereign capacity.  *See e.g.,  Paradissiotis v. United States*, 304 F.3d 1271, 1275 (Fed. Cir. 2002) ("Thus, valid regulatory measures taken to serve substantial national security interests may adversely affect individual contract-based interests and expectations, but those effects have not been recognized as compensable takings for Fifth Amendment purposes.").

inferring that a civil cause of action of some sort lay in favor of someone.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)).  The Second Circuit—the jurisdiction in which the Gottdieners claim they would have sought restitution if given the opportunity—has held that "as an 'elemental canon' of statutory construction, we are to be 'especially reluctant' to imply a private right of action where the statute explicitly provides a different remedy." *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308 (2d Cir. 2000) (quoting *Karahalios v. National Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 533 (1989)). "Further, 'the mere fact that the statute was designed to protect [a certain group] does not require the implication of a private cause of action for damages on their behalf.'" *Alaji Salahuddin*, 232 F.3d at 308 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979)). In *Alaji Salahuddin*, the Second Circuit held that even though the criminal statute at issue provided for mandatory restitution under the MVRA (18 U.S.C. § 3663A), it did not create a private right of action that could be enforced by individual victims. 232 F.3d at 307, 311-12.

In *Alaji Salhuddin*, the relevant criminal statute was silent as to whether a private cause of action for damages existed and the court needed to interpret Congressional intent.  In doing so, it recognized that "the 'dispositive question' is whether Congress intended to create a private right of action . . . . [I]f that question is answered 'in the negative, our inquiry is at an end.'" 232 F.3d at 308 (quoting *Transamerica*, 444 U.S. at 24).  Here, section 3771 is not silent as to Congressional intent.  By its express terms, section 3771 unequivocally provides, under a subheading labeled "no cause of action," that "nothing in this chapter shall be construed to authorize a cause of action for damages . . . .)." 18 U.S.C. § 3771(d)(6).  Numerous courts have interpreted this precise language to mean exactly what it states:  there is no private right of action under the CVRA. *See e.g.*, *Shakur El-Bey v. Menefee*, No. 3:14-CV-47-WKW, 2014 WL

25

6633544, at *18 (M.D. Ala. Oct. 27, 2014) (no private right of action under section 3771), *report and recommendation adopted in part, rejected in part on other grounds*, 2014 WL 6633484 (M.D. Ala. Nov. 21, 2014); *200,000 Towers Inv'rs Restitution Victims v. United States ex rel. U.S. Prob. Office New York City Staff Breach of Crime Victims Act*, No. 13 CIV. 8563 PKC, 2013 WL 6673612, at *2 (S.D.N.Y. Dec. 18, 2013) ("It also appears that the petition fails to plausibly state a claim upon which relief can be granted.  The petition is brought pursuant to the CVRA, which does not provide for a private right of action."); *Cunningham v. United States Dep't of Justice*, 961 F.Supp.2d 226, 241 (D.D.C. 2013) ("No judicial relief may be had under the CVRA because that statute does not allow a private party to sue for enforcement."); *Lopez v. Kora*, No. 3:12-CV-0510-M BK, 2012 WL 1242376, at *2 (N.D. Tex. Mar. 12, 2012), ("Likewise, there is no private cause of action under the Crime Victims Rights Act, 18 U.S.C. § 3771 . . . .") *report and recommendation adopted*,  2012 WL 1242341 (N.D. Tex. Apr. 12, 2012); *Upton v. Fakhoury*, No. CIV S-10-3419 WBS, 2011 WL 3703364, at *1 (E.D. Cal. Aug. 23, 2011) ("Moreover, no independent right of action was created by the statute [§ 3771] relied upon by petitioner."); *see also United States v. Rubin*, 558 F. Supp. 2d 411, 424 (E.D.N.Y. 2008) ("In the absence of an action for money damages—a legal impossibility, given the utter dearth of evidence that Congress intended to . . . provide such redress for victims under the CVRA—there appear to be within the CVRA's intendment a number of identifiable wrongs for which there exists no practical retrospective remedy.").

Even putting aside, for the sake of argument, the non-existence of the cause of action that the Gottdieners describe was taken, the Federal Circuit has held that such a cause of action does not qualify as a cognizable property interest for Fifth Amendment takings purposes.  In *Adams v. United States*, the Federal Circuit, in the context of a Federal employees' compensation statute

"decline[d] to treat a statutory right to be paid money as a legally-recognized property interest, as we would real property, physical property, or intellectual property."  391 F.3d 1212, 1225 (Fed. Cir. 2004).  The court instead viewed plaintiffs' alleged statutory right to overtime compensation "as nothing more than an allegation that money is owed."  *Id*. (holding that plaintiffs-appellants had failed to state a takings claim upon which relief could be granted).  The Federal Circuit similarly rejected an allegation that plaintiffs' administrative claim to overtime compensation pending before the Government Accountability Office had been taken by an act of Congress. While recognizing that "sometimes a cause of action may fall within the definition of property recognized under the Takings Clause," the Court went on to hold that such "precedent has limited the application of the Takings Clause to cases in which the cause of action protects a legally-recognized property interest."  *Id*. at 1225-26 (citations omitted).  Because the underlying alleged entitlement to money owed under a statute is not a recognized property interest, the cause of action seeking to recover such money "fail[ed] to qualify as a recognized property interest under the Takings Clause."  *Adams*, 391 F.3d at 1226.

The Gottdieners' claims here must fail for the same reasons.  Even if the Gottdieners had a right to seek restitution under the CVRA, this is simply a right to seek money that was created by law and, therefore, is not a recognized property interest for Fifth Amendment takings purposes.  *See Adams,* 391 F.3d at 1225.  It follows that the Gottdieners' claim that sealing Mr. Sater's criminal proceedings deprived them of a cause of action under the CVRA for restitution fails as well, because it is premised upon the underlying claim for money due under a statute, which is not a cognizable property interest under the Takings Clause.[14]

---

[14]    As we demonstrate below, plaintiffs' failure to identify a property interest cognizable under the Fifth Amendment "is fatal not only to [plaintiff's] takings claim, but also to its illegal

B.      Plaintiffs' Takings Claim Is Invalid As It Appears To Be Based On Allegedly
        Unauthorized Government Action Which Cannot Form The Basis For A Taking

Even if the complaint raises a plausible taking claim and identifies a protected property

interest under the CVRA, it fails to state a valid taking claim because it appears to contend that

the actions that allegedly led to the taking were beyond the authority and discretion of the district

court or the prosecutors.  It is settled law that a takings claim must be based upon *authorized*

government conduct.  *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 126-27 n.16

(1974); *Short v. United States*, 50 F.3d 994, 1000 (Fed. Cir. 1995); *Tabb Lakes, Ltd. v. United

States*, 10 F.3d 796, 802 (Fed. Cir. 1993).

The Gottdieners recognize in their amended complaint the need to allege that the

Government's actions were lawful to state a takings claim, yet the essence of their complaint is

that the Government violated the CVRA.  This tension results in the Gottdieners making the

paradoxical allegation that the Government's actions were sufficiently within the scope of their

authority for takings purposes, yet were contrary to Federal law—specifically, the CVRA.  *See*

Complaint at ¶¶ 82-84 (alleging that the government and/or the district court acted with authority

in concealing the sentencing proceedings, notwithstanding the CVRA's requirement that victims

be notified of such sentencing proceedings, and further alleging that the violation of such

requirement resulted in a taking).

Plaintiffs cannot have it both ways.  Either the secrecy was legal and, therefore,

authorized, or illegal and, therefore, beyond the scope of the court's or prosecutors' discretion.

If the secrecy was illegal under the CVRA, it must also have been outside the district court's and

the Government's authority to seek to protect cooperating witnesses.  *Short*, 50 F.3d at 1000

---

exaction and due process claims." *Texas State Bank v. United States*, 423 F.3d 1370, 1380-81
(Fed. Cir. 2005).

("the government action upon which the takings claim is premised must be authorized, either expressly or by necessary implication by some valid enactment of Congress ") (citing *Langenegger v. United States*, 756 F.2d 1565, 1572 (Fed. Cir. 1985); *Southern Cal. Fin. Corp. v. United States*, 634 F.2d 521, 523 (Ct. Cl. 1980)).  Although plaintiffs muddle the issue, the essence of what they appear to allege is that there was a taking *because* the Government violated the CVRA and the MVRA.  *See e,g,*, Complaint ¶¶ 65-67 (alleging the law requires the entry of joint and several restitution liability against each defendant in a conspiracy, yet there was no discussion of restitution at Mr. Sater's sentencing); ¶¶74-81 (alleging that the White Rock victims had the right to be told of Sater's sentencing and to sue to force restitution, but this right was rendered meaningless because the Government hid the entire case from victims).  The plaintiffs' allegations thus appear to rely upon the notion that the alleged taking action was not authorized; for this reason, they have not stated a valid takings claim.

As the Federal Circuit explained in *Rith Energy, Inc. v. United States*, "if the plaintiff claims that its property was taken *regardless* of whether the agency acted consistently with its statutory and regulatory mandate, [prior case law] stands for the proposition that the takings claim can be litigated in the Court of Federal Claims without the need first to litigate the issue of lawfulness in [another forum]."  247 F.3d 1355, 1365-66 (Fed. Cir. 2001) (emphasis in original). However, "to the extent that the plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation, [prior case law] does not give the plaintiff a right to litigate that issue in a takings action rather than in the congressionally mandated [forum]."  *Id*. at 1366 (emphasis in original); *see also Acadia Tech., Inc. v. United States,* 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("[Plaintiff's] assertion that Customs' actions ran afoul of the Customs statutes therefore does not form the basis for a legal claim under the Takings Clause of the Fifth

Amendment.") (collecting cases); *Lion Raisins, Inc. v. United States,* 416 F.3d 1356, 1370 (Fed. Cir. 2005) ("Because Lion's takings claim was premised on the allegations that the RAC violated the statute and regulations, the Court of Federal Claims properly dismissed the complaint."). Thus, to the extent that the Gottdiener's takings claim depends upon a finding that the Government violated Federal law, it is not properly before this Court.

On the other hand, were the Gottdieners to concede that the district court and prosecutors acted within the bounds of their authority and discretion under the CVRA to seal the criminal proceedings of a cooperating witness and to not invite victims to the proceedings or impose a restitution requirement, then there would be no taking (nor any illegal exaction) because ultimately the district court properly exercised its discretion not to order that Mr. Sater pay restitution. *See Rith Energy, Inc.*, 247 F.3d at 1366 ( holding "on the facts of this case, the consequence of assuming the lawfulness of" the agency's actions meant that no taking had occurred).

Moreover, even if the Government's authorized exercise of its prosecutorial discretion somehow resulted in the Government obtaining plaintiffs' property (a contention that is not supported by the facts alleged) that still would not constitute a taking.  Even assuming the Government acquired property of plaintiffs, to the extent it did so in the exercise of legitimate police powers, such action does not implicate the Fifth Amendment takings clause because "property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *Kam-Almaz v. United States*, 682 F.3d 1364, 1371 (Fed. Cir. 2012) (quoting *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008)); *see also Acadia Tech., Inc.*, 458 F.3d at 1331 (Fed. Cir. 2006) ("When property has been seized

pursuant to the criminal laws . . . such deprivations are not 'takings' for which the owner is entitled to compensation.") (citations omitted).[15]

### C. The Complaint Fails To State A Claim For An Illegal Exaction Because The Government Has Not Received Or Taken Money From The Gottdieners

As noted above, the Court does not possess jurisdiction over the Gottdieners' illegal exaction claim because the statutes which they claim were violated do not authorize (in fact they expressly disclaim) a cause of action against the Government for the return of money.  However, even assuming Congress had not disclaimed such an action, plaintiffs still would fail to state a claim for an illegal exaction because "an 'illegal exaction,' as that term is generally used, involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967).  Here, the Gottdieners' claim fails because they do not allege that they paid their money to the Government (or to a third party as compelled by the Government).

Similarly, this Court has dismissed illegal exaction claims for failure to state a claim when a plaintiff asserts that it is entitled to be paid money it never received.  *See e.g.*, *Piszel v. United States*, 121 Fed. Cl. 793, 801 (2015), *appeal argued*, No. 15-5100 (Fed Cir. April 7, 2016) (former Fannie Mae employee's claim for severance compensation ); *Andres v. United*

---

[15]     "The 'police powers ... are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions.'" *Kam-Almaz*, 682 F.3d at 1372 (quoting *The License Cases*, 46 U.S. 504, 583 (1847)); *see also Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.") (citing *United States v. Fuller*, 409 U.S. 488, 492, 93 (1973); *United States v. Rands*, 389 U.S. 121, 125 (1967)).

*States*, No. 03-2654, 2005 WL 6112616, at *3 (Fed. Cl. July 28, 2005).  In *Andres*, this Court

dismissed a claim by a former postal worker for backpay she claimed that she was entitled to as a

result of an arbitrator's decision.  *Andres*, 2005 WL 6112616, at *3.  The Court noted that "were

the plaintiff's theory of illegal exaction correct, an illegal exaction would lie in almost every case

that comes before this Court."  *Id*.  There is an important distinction between illegal exaction

claims, in which plaintiffs seek the return of money they paid over to the Government or at the

Government's direction, and claims for money never received from the Government, as the

Court explained:

> However, what distinguishes an illegal exaction from a back pay or
> breach of contract claim, is that in an illegal exaction case the
> claimant has paid money over to the Government that he once had
> in his pocket, and in a back pay or breach of contract claim the
> claimant is seeking payment of money the claimant has never
> received.  In short, the plaintiff's theory of illegal exaction is
> incorrect.

*Id*.  Here, it is not alleged that the Government possesses Mr. Sater's restitution payments, let

alone restitution due the Gottdieners from Mr. Sater.  Thus, plaintiffs cannot state a viable claim

that the Government exacted their money.

Nor can the Gottdieners rely upon the "in effect" language found in *Eastport S.S. Corp.*,

372 F.2d at 1007, which provides that an illegal exaction can occur when the plaintiff has either

paid over money directly to the Government or "in effect" has paid money to the Government.

As discussed in *Andres*, the courts have only recognized the "in effect" language in two

situations.  One situation is where the Government has mandated that the plaintiff pay money to

a third-party, in violation of a Constitutional, statutory or regulatory provision.  *See Andres*, 2005

WL 6112616, at *3 (citing *Aerolineas Argentinas*, 77 F.3d at 1573-74).  The other situation is

"where the Government has taken a plaintiff's property and converted that property into money,

preventing the return of the illegally-taken property." *Andres*, 2005 WL 6112616, at *3 (citing

*Bowman v. United States*, 35 Fed. Cl. 397, 401 (1996)).  Neither situation applies to the facts

alleged in the complaint here.

Accordingly, the Gottdieners have failed to state a claim for relief with respect to their

illegal exaction claim.

> D.   Collateral Estoppel Bars Plaintiffs' Claims Because The Issue Of
>       Whether The Gottdieners Were Mr. Sater's Victims Has Already
>       <u>Been Litigated In the Southern District of New York And The Second Circuit</u>

Plaintiffs' takings and illegal exaction claims must be dismissed for the additional reason

that they have previously litigated and lost the issue underpinning their claims here – that the

conviction of Mr. Sater was connected to the fraud perpetrated by Mr. Palagonia, for which the

plaintiffs seek compensation.

 "The affirmative defenses of *res judicata* and collateral estoppel are also properly

considered under a RCFC 12(b)(6) motion to dismiss." *Copar Pumice Co., Inc.*, 112 Fed. Cl.,

515, 527 (2013) (citing *Lewis v. United States*, 99 Fed. Cl. 772, 781 (2011)).  Collateral estoppel,

or issue preclusion, may be applied to preclude a party from litigating an issue if the following

factors are met:

> (1) the issue presented in the second action must be identical to
> one decided in the first action; (2) the issue must have been
> actually litigated in the first action; (3) resolution of the issue
> was essential to a final judgment in the first action; and (4) the
> party against whom estoppel is invoked had a full and fair
> opportunity to litigate the issue in the first action.

*Underwood Livestock Inc. v. United States*, 89 Fed. Cl. 287, 300 (2009) (quoting *Innovad Inc. v.*

*Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001)); *see also Mother's Restaurant, Inc. v.*

*Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983) (expressing fourth factor as a question

of "full representation").

Here, plaintiffs allege that they were defrauded by their broker, Alfred Palagonia of the D.H. Blair brokerage house. *See* Complaint, ¶¶ 34-37. Judge Glasser recognized the Gottdieners as being among Mr. Palagonia's victims and ordered that they receive \$1.3 million in restitution. *Id*. at ¶¶ 38-39. According to the Gottdieners' complaint, Mr. Palagonia's securities fraud was part of a larger racketeering enterprise known as the "White Rock" conspiracy. *Id*. at ¶¶ 34-36. The complaint alleges that Mr. Sater was the "ringleader in the 'White Rock' criminal enterprise" and "as a matter of restitution law (the MVRA), Sater is responsible for all the losses of all the victims, jointly and severally . . . ." *Id*. at ¶ 62. Importantly, however, the complaint does not allege that the Gottdieners had any direct dealings with Mr. Sater. Instead, the complaint alleges that because Mr. Sater masterminded the fraud committed by their own broker (Mr. Palagonia), they are Mr. Sater's victims.

Yet, the plaintiffs have already actually litigated, in the Southern District of New York and at the Second Circuit, whether they were victims of the crime to which Mr. Sater pled guilty. The Gottdieners brought a civil RICO suit against Mr. Sater. As discussed above, in dismissing their complaint, the district court specifically held that Mr. Sater *was not* convicted in connection with Mr. Palagonia's fraud. *See Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 394-95 (S.D.N.Y.), *on reconsideration,* 35 F. Supp. 3d 402 (S.D.N.Y. 2014) and *aff'd,* 602 F. App'x 552 (2d Cir. 2015) (emphasis added). Thus, in the civil suit by the Gottdieners against Mr. Sater, the SDNY held that the Gottdieners were not Mr. Sater's victims when he committed the acts to which he pleaded guilty before Judge Glasser.

This issue of whether Sater's conviction was connected to fraud against the Gottdieners was essential to the trial court's judgment and plaintiffs had a full and fair opportunity to litigate the issue in the district court; thus, collateral estoppel bars them from relitigating the issue here.

Indeed, the Gottdieners filed a motion for reconsideration with the trial court on this issue, and the court once again held "that Defendants' convictions were not in connection with their alleged aiding and abetting of Mr. Alfred Palagonia's securities fraud, and therefore . . . § 1964(c) prevented such conduct from serving as predicate acts for Plaintiffs' substantive RICO claim." *Estate of Gottdiener*, 35 F. Supp. 3d at 405 (S.D.N.Y. 2014) *aff'd*, 602 F. App'x 552 (2d Cir. 2015). Though here the Gottdieners raise the issue of Mr. Sater's involvement with Mr. Palagonia's fraud scheme in the context of their jurisdictionally barred takings/illegal exaction claim, as opposed to a civil RICO suit, the issue that would need to be decided here is the same: whether Mr. Sater was convicted for aiding Mr. Palagonia's fraud against the Gottdieners. As that question has already been answered in the negative by the district court and affirmed by the Second Circuit, it cannot be relitigated here.[16]

In their amended complaint, the Gottdieners attempt to respond to this argument, which we made in our motion to dismiss the Gottdieners' original complaint, by arguing that the district

---

[16]    The complaint does not appear to allege that the Government committed any wrongdoing with respect to Mr. Palagonia's conviction and sentencing. However, to the extent the Gottdieners seek to be compensated by the United States for restitution they claim would otherwise be due from Mr. Palagonia, such a claim is barred by *res judicata* in its claim preclusion form. *Cunningham v. United States*, 748 F.3d 1172, 1179 (Fed. Cir. 2014) (citing *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)) (a claim against a party in privity with a prior defendant is precluded if it has already been adjudicated against the prior defendant). The Government and the Gottdieners stipulated for purposes of the restitution action brought in connection with Mr. Palagonia's criminal case that "for purposes of this proceeding only that the Victims' losses caused by Alfred Palagonia's conspiracy to commit securities fraud total \$1.3 million dollars . . . ." A1. Thus, *res judicata* precludes the Gottdieners from claiming here that they are entitled to further restitution as a result of Mr. Palagonia's conspiracy, which should be paid by the Government. Moreover, such a claim would be moot because the district court awarded them the total restitution from Mr. Palagonia to which they agreed they were entitled. A case is moot when a party has already received the complete relief to which it is entitled. *See Hernandez v. Dep't of Air Force*, 498 F.3d 1328, 1333 (Fed. Cir. 2007) (citing *County of L.A. v. Davis*, 440 U.S. 625, 631 (1979); *Cooper v. Dep't of the Navy*, 108 F.3d 324, 326 (Fed. Cir. 1997)).

court was deciding a different issue than the one presented here.  *See* Complaint at ¶ 107.
According to the Gottdieners, the district court merely held that because the Gottdieners had not
been named as victims in the information to which Sater pled guilty their action against him did
not fall into the "conviction exception" for civil RICO suits.[17]  *Id.*  However, a review of the
district court's decision reveals that this is an understatement of that court's findings.

In the Gottdieners' civil case against Sater, the district court found that despite the
attachment of voluminous exhibits to the complaint, "nothing except surmise connects
Defendants' criminal convictions with Palagonia or Plaintiffs."  *Estate of Gottdiener v. Sater,* 35
F. Supp. 3d. at 395.  It was the Gottdieners who chose to attach and incorporate by reference the
criminal informations into their civil RICO complaint.  *Id.* at 391 ("The criminal Informations to
which Defendants pleaded guilty, the judgments against them and Defendant Sater's sentencing
transcript are appended to the Complaint as Exhibits E through H and N").  Nonetheless, the
district court found that "despite the apparent detail, the Complaint, taken together with its
exhibits as required by Rule 10(c), does not and apparently cannot plead that Defendants Sater
and Lauria paid Palagonia to fraudulently place USBNY and Holly stock with Plaintiffs.
Consequently, Plaintiffs' substantive RICO claim fails to satisfy Rule 9(b) and its particularity
requirement, and must be dismissed."  *Id.* at 400.  In other words, the Gottdieners' failure to
sufficiently plead Mr. Sater's involvement in the fraud allegedly perpetrated against them was a
separate ground from the "conviction exception" ground for dismissing their complaint.  Indeed,
the district court noted that the Gottdieners admitted in their complaint that "[i]n the case at bar,
for all we know (we don't), Defendants never heard of Plaintiffs until they got served with the
initiating Complaint in this action."  *Id.* at 395 (quoting the Gottdieners' complaint).

---

[17]	The conviction exception is discussed in greater detail above in section II.A.3.

The Gottdieners assert in their amended complaint that "there can be no preclusion from the SDNY case as the counterparty to the exercise of the chose in action option taken from plaintiffs would not have been Sater *but would have been the government*, thus there is no identity of party."  Complaint, ¶ 107 (emphasis added).  There are several problems with this statement.  First, the Gottdieners misunderstand the law on issue preclusion.  The identity of party issue applies only to the party against whom estoppel is being asserted, not to the party relying upon estoppel.  *See Innovad Inc.*, 260 F.3d at 1334 (issue preclusion applies if "the party *against whom estoppel is invoked* had a full and fair opportunity to litigate the issue in the first action.") (emphasis added) (citations omitted).  "Issue preclusion does not require identical parties; preclusion may be invoked in a case involving the same plaintiff and either a party or a non-party to the first action."  *Id*. (citations omitted).

Moreover, the Gottdieners' assertion that the chose in action that was taken from them is one against the Government is directly contrary to the language of the MVRA and CVRA, which provides that the statutes do not authorize claims against the Government.  *See* 18 U.S.C. § 3664(p) ("Nothing in this section or section . . . 3663A . . . shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States or any officer or employee of the United States."); *id*. at § 3771(d)(6) ("Nothing in this chapter shall be construed . . . to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages."). Finally, the Gottdieners' assertion that a statutory action against the Government (as opposed to Mr. Sater) was taken from them, is fatal to their takings claim.  The Federal Circuit recognized in *Adams* that a statutory obligation to be paid money by the Government is not a property interest encompassed by the Takings Clause.  *See* 391 F.3d at 1225-26 (holding that plaintiffs'

administrative claim for compensation before GAO was not a property interest for purposes of the Takings Clause).

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss the complaint.

Case 1:15-cv-01245-VJW  Document 18  Filed 07/27/16  Page 49 of 49

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant
Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Assistant Director

/s Christopher J. Carney
DAVID A. LEVITT                     CHRISTOPHER J. CARNEY
Trial Attorney                      Senior Trial Counsel
Commercial Litigation Branch        Commercial Litigation Branch
Civil Division                      Civil Division
United States Department of Justice United States Department of Justice
PO Box 480                          PO Box 480
Ben Franklin Station                Ben Franklin Station
Washington, DC  20044               Washington, DC  20044
                                    Telephone:  (202) 305-7597
                                    Facsimile:  (202) 307-2503
                                    E-mail:  chris.carney@usdoj.gov

July 27, 2016                       Attorneys for Defendant

39