IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESTATE OF ERNEST | ) | |
| GOTTDIENER, ET. AL., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 15-1245 |
| | ) | Judge Wolski |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

ROBERT E. KIRSCHMAN, JR.
Director

BRIAN A. MIZOGUCHI
Assistant Director

LISA L. DONAHUE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 353-9498
Fax. (202) 307-2503
E-mail. lisa.donahue@usdoj.gov

November 30, 2016                    Attorneys for Defendant

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................. 1

I.  The Court Does Not Possess Jurisdiction To Entertain Plaintiff's Claims .......................1

   A.  The Court Does Not Possess Jurisdiction To Review Or Overturn District Court Rulings ................................................................................................................2

   B.  The Court Does Not Possess Jurisdiction Over Plaintiffs' Illegal Exaction Claim Because The Statues Upon Which They Rely Expressly Disclaim A Right to Monetary Relief Against The Government ..................................................................6

II.  Plaintiffs' Complaint Fails To State Claims Upon Which Relief May Be Granted ...........8

   A.  The Amended Complaint Fails To Identify A Cognizable Property Interest ...............8

   B.  Plaintiffs' Takings Claim Is Invalid As It Appears To Be Based On Allegedly Unauthorized Government Action Which Cannot Form The Basis For A Taking .....13

   C.  The Complaint Fails To State A Claim For an Illegal Exaction Because The Government Has Not Received or Taken Money From The Gottdieners ...................15

   D.  Collateral Estoppel Bars Plaintiffs' Claims Because The Issue Of Whether The Gottdieners Were Mr. Sater's Victims Has Already Been Litigated In the Southern District of New York And The Second Circuit .........................................................16

CONCLUSION ....................................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*200,000 Towers Inv'rs Restitution Victims v. United States ex rel. U.S. Prob. Office New York City Staff Breach of Crime Victims Act*,
    No. 13 CIV. 8563 PKC, 2013 WL 6673612 (S.D.N.Y. Dec. 18, 2013) .................................. 11

*Acadia Tech., Inc. v. United States*,
    458 F.3d 1327 (Fed. Cir. 2006) ............................................................................................... 14

*Acceptance Insurance Cos., Inc. v. United States*,
    583 F.3d 849 (Fed. Cir. 2009) ............................................................................................... 8, 9

*Adams v. United States*,
    391 F.3d 1212 (Fed. Cir. 2004) ............................................................................................... 13

*Aerolineas Argentinas v. United States*,
    77 F.3d 1564 (Fed. Cir. 1996) ............................................................................................... 7, 8

*Air Pegasus of D.C., Inc. v. United States*,
    424 F.3d 1206 (Fed. Cir. 2005) ............................................................................................... 9

*Alaji Salahuddin v. Alaji*,
    232 F.3d 305 (2d Cir. 2000) ............................................................................................... 10, 11

*Allustiarte v. United States*,
    256 F.3d 1349 (Fed. Cir. 2001) ............................................................................................... 2

*Am. Pelagic Fishing Co. v. United States*,
    379 F.3d 1363 (Fed. Cir. 2004) ............................................................................................... 9

*Andres v. United States*,
    No. 03-2654, 2005 WL 6112616 (Fed. Cl. July 28, 2005) ..................................................... 15

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564, (1972) ............................................................................................................... 10

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ............................................................................................................... 10

*Conti v. United States*,
    291 F.3d 1334 (Fed. Cir. 2002) ............................................................................................... 9, 10

*Cort v. Ash*,
    422 U.S. 66 (1975) ............................................................................................................... 10

*Crocker v. United States,*
   125 F.3d 1475 (Fed. Cir. 1997) ......................................................................... 7

*Cunningham v. United States Dep't of Justice,*
   961 F.Supp.2d 226 (D.D.C. 2013) ................................................................... 11

*Cyprus Amax Coal Co. v. United States,*
   205 F.3d 1369 (Fed. Cir. 2000) ......................................................................... 7

*Duncan v. United States,*
   446 F. App'x 303 (Fed. Cir. 2011) ........................................................ 5, 7, 13, 14

*Eastport S.S. Corp. v. United States,*
   178 Ct.Cl. 599, 372 F.2d 1002 (1967) ......................................................... 6, 15

*Estate of Gottdiener v. Sater,*
   35 F. Supp. 3d 402 (S.D.N.Y. 2014) ....................................................... 6, 17, 18

*Estate of Gottdiener v. Sater,*
   602 F. App'x 552 (2d Cir. 2015) ............................................................... 6, 18

*Estate of Gottdiener v. Sater,*
   35 F. Supp. 3d 386 (S.D.N.Y 2014) ....................................................... 6, 17, 18

*Garrow v. Gramm,*
   856 F.2d 203 (D.C. Cir. 1988) ........................................................................ 10

*Garrow v. Phillips,*
   664 F. Supp. 2 (D.D.C. 1987) .................................................................... 10, 16

*Gump v. United States,*
   482 F. App'x 588 (Fed. Cir. 2012) .................................................................... 3

*Innovair Aviation Ltd. v. United States,*
   632 F.3d 1336 (Fed. Cir. 2011) ................................................................ 2, 4, 5

*Ivaldy v. United States,*
   123 Fed. Cl. 633 (2015) .................................................................................. 4

*Joshua v. United States,*
   17 F.3d 378 (Fed. Cir. 1994) ......................................................................... 2, 3

*Karahalios v. National Fed'n of Fed. Employees, Local 1263,*
   489 U.S. 527 (1989) ...................................................................................... 10

*Lion Raisins, Inc. v. United States,*
   416 F.3d 1356 (Fed. Cir. 2005) ...................................................................... 14

*Lopez v. Kora*,
No. 3:12-CV-0510-M (BK), 2012 WL 1242376 (N.D. Tex. Mar. 12, 2012) .......................... 11

*Lopez v. Kora*,
No. 3:12-CV-0510-M (BK), 2012 WL 1242341 (N.D. Tex. Apr. 12, 2012) .......................... 11

*Martl v. United States*,
No. 09-299L, 2010 WL 369212 (Fed. Cl. Jan. 29, 2010) .......................................... 4

*Milgroom v. United States*,
122 Fed. Cl. 779 (2015) .......................................................................... 4

*Milgroom v. United States*,
No. 15-5145, 2016 WL 3209574 (Fed. Cir. June 10, 2016) ...................................... 4

*Norman v. United States*,
429 F.3d 1081 (Fed. Cir. 2005) ........................................................... 6, 7, 15

*Petro-Hunt, L.L.C. v. United States*,
126 Fed. Cl. 367 (2016) .......................................................................... 3

*Piszel v. United States*,
833 F.3d 1366 (Fed. Cir. 2016) ................................................................ 15

*Regional Rail Reorganization Act Cases*,
419 U.S. 102 (1974) ............................................................................. 13

*Rith Energy, Inc. v. United States*,
247 F.3d 1355 (Fed. Cir. 2001) ................................................................ 14

*Shakur El-Bey v. Menefee*,
No. 3:14-CV-47-WKW, 2014 WL 6633484 (M.D. Ala. Nov. 21, 2014) .............................. 11

*Shakur El-Bey v. Menefee*,
No. 3:14-CV-47-WKW, 2014 WL 6633544 (M.D. Ala. Oct. 27, 2014) .............................. 11

*Shinnecock Indian Nation v. United States*,
782 F.3d 1345 (Fed. Cir. 2015) .............................................................. 2, 3

*Short v. United States*,
50 F.3d 994 (Fed. Cir. 1995) .................................................................. 13

*Stanford v. United States*,
125 Fed. Cl. 570 (2016) .......................................................................... 3

*Starr Int'l Co., Inc. v. United States*,
121 Fed. Cl. 428 (Fed. Cl. 2015) .......................................................... 15, 16

iv

*Suwannee S.S. Co. v. United States,*
  279 F.2d 874 (Ct. Cl. 1960) ........................................................................ 15

*Tabb Lakes, Ltd. v. United States,*
  10 F.3d 796 (Fed. Cir. 1993) ...................................................................... 13

*Transamerica Mortgage Advisors, Inc. v. Lewis,*
  444 U.S. 11 (1979) ............................................................................... 10, 12

*United States v. Fuller,*
  409 U.S. 488 (1973) ............................................................................... 9, 10

*United States v. Rubin,*
  558 F. Supp. 2d 411 (E.D.N.Y. 2008) ........................................................ 11

*Upton v. Fakhoury,*
  No. CIV S-10-3419 WBS, 2011 WL 3703364 (E.D. Cal. Aug. 23, 2011) .............. 11

*Vereda, Ltda. v. United States,*
  271 F.3d 1367 (Fed. Cir. 2001) .................................................................. 2, 6

## Statutes

18 U.S.C. § 1964(c) ....................................................................................... 17

18 U.S.C. § 3663A ...................................................................................... 7, 11

18 U.S.C. § 3664(p) ..................................................................................... 7, 9

18 U.S.C. § 3771 ................................................................................... passim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ESTATE OF ERNEST GOTTDIENER, ET. AL., | ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) No. 15-1245 |
| v. | ) Judge Wolski |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Rule 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this reply in support of our request that the Court dismiss the first amended complaint of plaintiffs, Estate of Ernest Gottdiener, Estate of Judit Gottdiener, Ervin Tausky, and Suan Investments (the Gottdieners). In support of our reply, we rely upon the statement of facts as set forth in plaintiffs' first amended complaint. *See* Mot. To Dismiss at 3, fn.2 [ECF Dkt. No. 18].

As we explained in our motion to dismiss, the Court does not possess subject matter jurisdiction to grant plaintiffs the relief they seek. Even if this Court were to determine it possesses jurisdiction, the complaint fails to state a claim upon which relief can be granted. Nothing presented in the Gottdieners' opposition to our motion to dismiss establishes this Court's jurisdiction over their claim or properly states a claim for damages. Accordingly, the first amended complaint should be dismissed.

ARGUMENT

I.      The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Claims

      A.      The Court Does Not Possess Jurisdiction To Review Or Overturn District Court Rulings

As we noted in our motion to dismiss, the gist of plaintiffs' complaint appears to be that the Department of Justice, through the United States Attorney's Office for the Eastern District of New York (USAO EDNY), in concert with the Federal judiciary—in particular Judge Glasser of the United States District Court for the Eastern District of New York (E.D.N.Y.)—collaborated to conceal Felix Sater's conviction and sentencing, thereby taking or illegally exacting the plaintiffs' alleged right to seek restitution from Mr. Sater.  *See e.g.*, Complaint ¶¶ 74-84. Therefore, plaintiffs effectively ask this Court to reverse Judge Glasser's decision not to notify the Gottdieners and other alleged victims of Mr. Sater's sentencing hearing, not to order restitution, and to seal the record of Mr. Sater's sentencing.

As we explained in our motion, this Court does not possess jurisdiction to review and effectively reverse the EDNY's decision not to include a restitution order or to notify purported victims to Mr. Sater's sentencing. Mot. To Dismiss at 8-18 [ECF Dkt. No. 18].  Nor does the Court possess such jurisdiction concerning the EDNY's decision to seal the criminal proceedings.  *Id.*  Rather, "[b]inding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court." *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015) (*citing Innovair Aviation Ltd. v. United States*, 632 F.3d 1336, 1343 (Fed. Cir. 2011); *Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001); *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001); *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)).  Moreover, this Court "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code."

*Joshua* 17 F.3d at 379 (quoting trial court decision in summary affirmance ruling); *Gump v. United States*, 482 F. App'x 588, 590 (Fed. Cir. 2012) (quoting *Joshua*).[1]

More specifically, the Federal Circuit has unequivocally held that this Court may not entertain takings claims that require reviewing the merits of district court decisions. *Shinnecock Indian Nation*, 782 F.3d at 1352 ("Adjudication of the [plaintiff's] proposed judicial takings claim would require the Court of Federal Claims to scrutinize the merits of the district court's judgment, a task it is without authority to undertake."); *see also Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367, 382 (2016) ("[T]he Court of Federal Claims and the Federal Circuit have rejected a variety of claims that required the court to review the decisions of another federal tribunal in a takings context.") (collecting cases), *appeal docketed*, No. 16-1983 (Fed. Cir. May 4, 2016); *Stanford v. United States*, 125 Fed. Cl. 570, 574 (2016) ("The court, however, does not have jurisdiction to adjudicate the enforcement authority of the SEC nor the decisions of a

---

[1]  As we noted in our motion to dismiss, plaintiffs' complaint acknowledges that the convictions of Messrs. Sater, Lauria, and Klotsman were publicly announced by the USAO EDNY in a March 2000 press release.  Mot. To Dismiss at 4 [ECF Dkt. No. 18].  In their opposition, plaintiffs contend that the fact of Mr. Sater's conviction was "not reasonably discoverable as of his 2009 sentencing."  Plf. Opp'n. at 4-5 [Dkt. No. 28].  For the purpose of this motion to dismiss pursuant to Rule 12(b)(1), it makes no difference when Mr. Sater's conviction was reasonably discoverable, because as we explained in our motion, even if the allegations in plaintiffs' complaint are accepted as true, this Court does not possess jurisdiction to consider the plaintiffs' claims.

On Tuesday, November 29, 2016, plaintiffs filed a notice with the Court, expressing their concern that footnote three of our motion to dismiss inaccurately implies that the March 2000 press release was available online in the year 2000.  *See* Mot. To Dismiss at 4, fn.3 [ECF Dkt. No. 18].  Although this interpretation is an untenable one, we clarify here that our motion to dismiss does not contend that the 2000 press release was available online in the year 2000.  Rather, in footnote three of our motion to dismiss, we provide both a citation to a September 13, 2000 hearing report containing a copy of the March 2, 2000 press release, and a link to a GPO website address where the September 13, 2000 report can be found, while noting that the website was "last visited July 6, 2016."  Therefore, footnote three to our motion to dismiss refers to the March 2000 press release that is attached to plaintiffs' first amended complaint and merely directs the Court to the online location where the 2000 Congressional report can now be found.

United States District Court."), *appeal docketed*, No. 16-1990 (Fed. Cir. May 4, 2016); *Ivaldy v. United States*, 123 Fed. Cl. 633, 636 (2015) ("The Federal Circuit has consistently held that this court cannot hear a takings claim that requires review of another court's decision") (citing *Vereda*, *Allustiarte*, and *Joshua*), *aff'd*, No. 16-1350 (Fed. Cir. July 7, 2016); *Milgroom v. United States*, 122 Fed. Cl. 779, 801 (2015) (holding that court has no authority to review judicial takings claim that requires scrutiny of other federal courts' decisions) (collecting cases), *aff'd*, No. 15-5145, 2016 WL 3209574 (Fed. Cir. June 10, 2016); *Martl v. United States*, No. 09-299L, 2010 WL 369212, at \*2 (Fed. Cl. Jan. 29, 2010) ("It is to no avail that plaintiff describes her suit as a takings claim-this court has no jurisdiction over takings claims that are founded on a challenge to the judgment of another federal court.").

As such, this Court is without the authority to review whether the E.D.N.Y. correctly determined that restitution was not applicable to Mr. Sater, or to effectively reverse Judge Glasser's decision by awarding the monetary equivalent of either the restitution he declined to order or the supposed value of the right to seek restitution that Judge Glasser is alleged to have improperly denied the Gottdieners. Further, for the Court to conclude that plaintiffs are owed compensation for being denied the opportunity to petition for restitution from Mr. Sater, it would need to review the district court's judgment in a criminal case – a matter over which this Court does not possess jurisdiction. The award of "compensation" that the Gottdieners seek here would effectively reverse Judge Glaser's decision that restitution was not applicable to Mr. Sater. Accordingly, the Gottdieners' suit represents a collateral attack on the district court's decision not to conduct restitution proceedings. Such attacks are outside the jurisdiction of this Court. *See Innovair Aviation Ltd.*, 632 F.3d at 1344-45 (reversing trial court, because consideration of

plaintiff's claims "necessarily involves a collateral attack on the [district court's]" approval of a substitute *res* bond as constituting the fair value of plaintiff's property).

In their opposition to our motion to dismiss, the plaintiffs imply that this Court must exercise jurisdiction over the Gottdiener's supposed taking and illegal exaction claims to prevent the E.D.N.Y. from abusing its authority.  Plf. Opp'n. at 10-13 [ECF Dkt. No. 28].  However, as we explained in our motion to dismiss, the questions of how to manage Mr. Sater's criminal case and whether the Gottdieners are entitled to restitution for Mr. Sater's actions are solely within the jurisdiction of the E.D.N.Y. and the Court of Appeals for the Second Circuit.

According to the Crime Victims' Rights Act (CVRA), the statute upon which plaintiffs rely, the proper forum for seeking restitution (or appealing its denial) is in the district court where the defendant has been prosecuted for a crime (and, in this case, the Court of Appeals for the Second Circuit).  *See Duncan v. United States*, 446 F. App'x 303, 305 (Fed. Cir. 2011) ("[T]o the extent that [plaintiff] is seeking to enforce certain rights to victims outlined in the Crime Victims' Rights Act, the proper forum for enforcing those rights is not the Court of Federal Claims but instead 'the district court . . . .'") (quoting 18 U.S.C. § 3771(d)(3) (rights to restitution "shall be asserted in the *district court* in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the *district court* in the district in which the crime occurred.") (emphasis added); *see* 18 U.S.C. § 3771(a)(6).  If the district court denies the purported victim's motion, "the movant may petition the court of appeals for a writ of mandamus," 18 U.S.C. § 3771(d)(3), not attempt to circumvent Congress's provisions by filing claims for the equivalent of restitution in other courts, such as this one.  Congress has plainly vested jurisdiction for claims seeking to assert victim's rights in the district courts and the

regional circuits, and this Court is not authorized to review and effectively reverse those courts' decisions.

Moreover, in addition to the criminal proceedings before the E.D.N.Y., the Gottdieners already unsuccessfully sued Felix Sater for compensatory damages in the United States District Court for the Southern District of New York (S.D.N.Y.). *See Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 394-95, 402 (S.D.N.Y.), *on reconsideration,* 35 F. Supp. 3d 402 (S.D.N.Y. 2014) *aff'd,* 602 F. App'x 552 (2d Cir. 2015). In that case, the S.D.N.Y. found that Mr. Sater had *not* been convicted of defrauding the Gottdieners. *Id.* For this Court to hold that the Gottdieners were deprived of a purported right to pursue compensation from Mr. Sater, the Court would need to find (1) that the S.D.N.Y. erred in its finding that Mr. Sater had not been convicted of defrauding the Gottdieners; and (2) that the S.D.N.Y. provided an inadequate forum for the Gottdieners to seek compensation. The Court does not possess such jurisdiction. *See Vereda, Ltda.,* 271 F.3d at 1375 ("The Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal.") (citations omitted).

B.  The Court Does Not Possess Jurisdiction Over Plaintiffs' Illegal Exaction Claim Because The Statutes Upon Which They Rely Expressly Disclaim A Right To Monetary Relief Against The Government

The Gottdieners plead in the alternative that the Government illegally exacted from them "a chose in action created by 18 U.S.C. § 3771." Compl. at ¶¶ 3, 86, 118-19. "An 'illegal exaction,' as that term is generally used, involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967)). Although normally this Court does not possess jurisdiction to entertain due process claims under the Tucker Act, the Court "has been

held to have jurisdiction over illegal exaction claims 'when the exaction is based upon an asserted statutory power.'" *Norman*, 429 F.3d at 1095 (quoting *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed.Cir.1996)).  "To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Id.* (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).

Here—far from expressly or impliedly providing a cause of action against the United States—the two statutes relied upon by the Gottdieners for their illegal exaction claim, *expressly* state that they do *not* provide a right to seek money damages against the United States.  *See* 18 U.S.C. § 3664(p) ("Nothing in this section or section . . . 3663A . . . shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States or any officer or employee of the United States."); *id*. at § 3771(d)(6) ("Nothing in this chapter shall be construed to . . .  create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages."); *see also Duncan*, 446 F. App'x at 305 ("Based on the plain language of the Act, we agree with the Court of Federal Claims that it does not have jurisdiction to address this claim.  Section 3771(d)(6) of the Act clearly states that the Crime Victims' Rights Act does not create a cause of action against the United States for money damages.").  Thus, there is no Tucker Act jurisdiction for plaintiffs' illegal exaction claim.

Moreover, the Tucker Act does not provide jurisdiction in the Court of Federal Claims for illegal exaction claims "where Congress has expressly placed jurisdiction elsewhere." *Crocker v. United States*, 125 F.3d 1475, 1477 (Fed. Cir. 1997) (quoting *Aerolineas Argentinas*

77 F.3d at 1572-1573) ("the Tucker Act provides jurisdiction in the Court of Federal Claims to recover 'exactions said to have been illegally imposed by federal officials (*except where Congress has expressly placed jurisdiction elsewhere*).'") (emphasis added).  As explained above, Congress has unambiguously vested jurisdiction over the enforcement of these criminal sentencing statutes – and the provision of the restitution plaintiffs seek -- in the United States District Courts.  More specifically, Congress has expressly mandated that a putative crime victim assert his rights, including the rights to be involved in proceedings and to obtain restitution, in the district court where the prosecution is occurring.  *See* 18 U.S.C. § 3771(d)(3) ("The rights described in [the CVRA] shall be asserted in the district court in which a defendant is being prosecuted for the crime . . . . If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus.").

For these reasons, and as set forth in our motion to dismiss the Court lacks jurisdiction to entertain the Gottdieners' taking and illegal exaction claims.

II.     Plaintiffs' Complaint Fails To State Claims Upon Which Relief May Be Granted

A.     The Amended Complaint Fails To Identify A Cognizable Property Interest

In their opposition, plaintiffs appear to argue that they have, in fact, stated a plausible claim, because the Mandatory Victim Rights Act (MVRA) creates a property interest in restitution.  Plf. Opp'n. at 14-23 [ECF Dkt. No. 14-23].  This theory is unsupportable.

Courts apply a two-part test when evaluating whether governmental action constitutes a taking without just compensation.  "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking.  Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'"  *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d

849, 854 (Fed. Cir. 2009) (collecting Federal Circuit cases).  In doing so, courts "do not reach this second step without first identifying a cognizable property interest." *Id*. (quoting *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005)).  "If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court's task is at an end." *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004).

In this case, the Gottdieners assert that they had a property interest in the alleged right to seek restitution from Mr. Sater under the CVRA and that this right was taken because the Government imposed a secrecy order that allegedly prevented them from pursuing their restitution claim against Mr. Sater.  *See e.g.*, Complaint ¶ 3 ("That property which Plaintiffs' complain was compensably taken from them (or, in the alternative, illegally exacted from them) is a chose in action created by 18 U.S.C. § 3771").  As we demonstrate, however, the right to seek restitution is not a property right protected by the Fifth Amendment.

No property interest is created by a statute when Congress has in the language of the statute itself disclaimed the creation of such a right.  *See Conti v. United States*, 291 F.3d 1334, 1340 (Fed. Cir. 2002) (no property right created when statutory language makes "clear the congressional intent that no compensable property be created in the permit lands themselves as a result of the permit.") (quoting *United States v. Fuller*, 409 U.S. 488, 494 (1973)).  Both the MVRA and the CVRA expressly provide that the statutes create no right of action against the United States.  *See* 18 U.S.C. § 3664(p); *id*. at § 3771(d)(6).  Moreover, the CVRA—the statute upon which the Gottdieners chiefly rely—provides that it does not authorize a cause of action against anyone.  *Id*. at § 3771(d)(6).

The language in the CVRA and the MVRA makes clear that Congress did not intend to create a compensable property right in those claiming to be victims under the statute.  *See Fuller*,

9

409 U.S. at 489 (statute providing "that its provisions 'shall not create any right, title, interest, or estate in or to the lands.'" (citations omitted); *Conti*, 291 F.3d at 1342 (statute stating that it "shall not create any right, title, or interest in or to any fish."). "As the Supreme Court has repeatedly stated, 'Property interests are not created by the Constitution. Rather they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Garrow v. Phillips*, 664 F. Supp. 2, 5 (D.D.C. 1987), *aff'd sub nom. Garrow v. Gramm*, 856 F.2d 203 (D.C. Cir. 1988) (*quoting Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, (1972)).

Indeed, the Gottdieners' supposed chose in action does not actually exist. *See* Compl. at 3 ("The property which Plaintiffs' complain was compensably taken from them (or was illegally exacted from them) *is a chose in action created by 18 U.S.C. § 3771*.") (emphasis added). The "Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)). The Second Circuit—the jurisdiction in which the Gottdieners claim they would have sought restitution if given the opportunity—has held that "as an 'elemental canon' of statutory construction, we are to be 'especially reluctant' to imply a private right of action where the statute explicitly provides a different remedy." *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308 (2d Cir. 2000) (quoting *Karahalios v. National Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 533 (1989)). "Further, 'the mere fact that the statute was designed to protect [a certain group] does not require the implication of a private cause of action for damages on their behalf.'" *Alaji Salahuddin*, 232 F.3d at 308 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979)).

10

In *Alaji Salahuddin*, the Second Circuit held that even though the criminal statute at issue provided for mandatory restitution under the MVRA (18 U.S.C. § 3663A), it did not create a private right of action that could be enforced by individual victims. 232 F.3d at 307, 311-12. Furthermore, by its express terms, section 3771 of the CVRA unequivocally provides, under a subheading labeled "no cause of action," that "nothing in this chapter shall be construed to authorize a cause of action for damages . . . ." 18 U.S.C. § 3771(d)(6). Numerous courts have interpreted this precise language to mean exactly what it states: there is no private right of action under the CVRA. *See e.g.*, *Shakur El-Bey v. Menefee*, No. 3:14-CV-47-WKW, 2014 WL 6633544, at *18 (M.D. Ala. Oct. 27, 2014) (no private right of action under section 3771), *report and recommendation adopted in part, rejected in part on other grounds*, 2014 WL 6633484 (M.D. Ala. Nov. 21, 2014); *200,000 Towers Inv'rs Restitution Victims v. United States ex rel. U.S. Prob. Office New York City Staff Breach of Crime Victims Act*, No. 13 CIV. 8563 PKC, 2013 WL 6673612, at *2 (S.D.N.Y. Dec. 18, 2013) ("It also appears that the petition fails to plausibly state a claim upon which relief can be granted. The petition is brought pursuant to the CVRA, which does not provide for a private right of action."); *Cunningham v. United States Dep't of Justice*, 961 F.Supp.2d 226, 241 (D.D.C. 2013) ("No judicial relief may be had under the CVRA because that statute does not allow a private party to sue for enforcement."); *Lopez v. Kora*, No. 3:12-CV-0510-M BK, 2012 WL 1242376, at *2 (N.D. Tex. Mar. 12, 2012), ("Likewise, there is no private cause of action under the Crime Victims Rights Act, 18 U.S.C. § 3771 . . . .") *report and recommendation adopted*, 2012 WL 1242341 (N.D. Tex. Apr. 12, 2012); *Upton v. Fakhoury*, No. CIV S-10-3419 WBS, 2011 WL 3703364, at *1 (E.D. Cal. Aug. 23, 2011) ("Moreover, no independent right of action was created by the statute [§ 3771] relied upon by petitioner."); *see also United States v. Rubin*, 558 F. Supp. 2d 411, 424 (E.D.N.Y. 2008)

("In the absence of an action for money damages—a legal impossibility, given the utter dearth of evidence that Congress intended to . . . provide such redress for victims under the CVRA—there appear to be within the CVRA's intendment a number of identifiable wrongs for which there exists no practical retrospective remedy.").

Plaintiffs do not substantively address the question of whether they possess a cause of action to sue Mr. Sater for restitution pursuant to the CVRA and the MVRA.  Instead, they contend the following:  had the Gottdieners prevailed in a suit for restitution against Mr. Sater, the E.D.N.Y. could have entered a restitution order, and that restitution order could have been recorded as a judgment lien.  Plf. Opp'n. at 18 [ECF Dkt. No. 28].  According to plaintiffs, judgment liens have been interpreted as property for takings purposes in New York.  *Id.* at 16, n.17, and 18.  Plaintiffs apparently contend – without citing any authority for their theory – that the right to sue for a restitution order must also be considered property for takings purposes, because if their suit for restitution were to prevail, then they would have receive a restitution order which could have been considered property if recorded as a judgment lien.  *Id.* at 22.

First, plaintiffs are not in possession of a restitution order or a judgment lien.  In their complaint in this matter, plaintiffs made clear that they did not sue here to receive restitution, but only for the right to seek an order of restitution.  Compl. at ¶ 110 ("there is no claim here that there was a right to restitution, and that that was taken, rather that there was a right to sue to get it which was taken.  That is a huge difference.  With all seriousness, the question is not whether there was a right to $1,000,000, but whether there was a right to attempt a freethrow in an NBA playoff and if successful then win the $1,000,000.")  As we explained in our motion to dismiss, the *right* to seek restitution does not qualify as a cognizable property interest for Fifth Amendment takings purposes, because the underlying alleged entitlement to money owed under

12

a statute is not a cognizable property interest. *Adams v. United States*, 391 F.3d 1212, 1225, 1226 (Fed. Cir. 2004) (holding that plaintiffs-appellants had failed to state a takings claim upon which relief could be granted where plaintiffs' alleged statutory right to overtime compensation is "nothing more than an allegation that money is owed.").[2]  Thus, even if the MVRA provided for mandatory restitution under these circumstances, and even if the Gottdieners had a right to seek restitution under the CVRA, this "right" to seek restitution is simply a right to seek money, which is not a recognized property interest for Fifth Amendment takings purposes. *See Adams,* 391 F.3d at 1225.  "[T]o the extent that [plaintiff] is seeking to enforce certain rights to victims outlined in the Crime Victims' Rights Act, the proper forum for enforcing those rights is not the Court of Federal Claims but instead 'the district court . . . .'".  *Duncan*, 446 F. App'x at 305.

> B.    Plaintiffs' Takings Claim Is Invalid As It Appears To Be Based On Allegedly Unauthorized Government Action Which Cannot Form The Basis For A Taking

It is settled law that a takings claim must be based upon *authorized* government conduct. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 126-27 n.16 (1974); *Short v. United States*, 50 F.3d 994, 1000 (Fed. Cir. 1995); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993).  Plaintiffs' complaint appears to contend that the actions that allegedly led to the taking were beyond the authority and discretion of the district court or the prosecutors, rendering their taking claim invalid.  *See e,g,*, Complaint ¶¶ 65-67 (alleging the law requires the entry of joint and several restitution liability against each defendant in a conspiracy, yet there was no discussion of restitution at Mr. Sater's sentencing); ¶¶74-81 (alleging that the White

---

[2]  Indeed, even in the rare circumstances that a cause of action could be considered a property interest, it would only be where the underlying subject of the claim is a protected property interest.  *See, e.g. Adams*, 391 F.3d 1212, at 1225.  Here, plaintiffs' cause of action is intended not to protect an existing property or restitution order, but to *seek* restitution.

Rock victims had the right to be told of Sater's sentencing and to sue to force restitution, but this right was rendered meaningless because the Government hid the entire case from victims).

"[T]o the extent that the plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation, [prior case law] does not give the plaintiff a right to litigate that issue in a takings action rather than in the congressionally mandated [forum]."  *Rith Energy, Inc. v. United States* 247 F.3d 1355, 1366 (Fed. Cir. 2001)  (emphasis in original); *see also Acadia Tech., Inc. v. United States,* 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("[Plaintiff's] assertion that Customs' actions ran afoul of the Customs statutes therefore does not form the basis for a legal claim under the Takings Clause of the Fifth Amendment.") (collecting cases); *Lion Raisins, Inc. v. United States,* 416 F.3d 1356, 1370 (Fed. Cir. 2005) ("Because Lion's takings claim was premised on the allegations that the RAC violated the statute and regulations, the Court of Federal Claims properly dismissed the complaint.").  Thus, to the extent that the Gottdieners' takings claim depends upon a finding that the Government violated Federal law, it is not properly before this Court and can only be brought in E.D.N.Y.  *See Duncan*, 446 F. App'x 303, 305 (Fed. Cir. 2011); 18 U.S.C. § 3771(d)(3).  On the other hand, were the Gottdieners to concede that the district court and prosecutors acted within the bounds of their authority and discretion under the CVRA to seal the criminal proceedings of a cooperating witness and to not invite victims to the proceedings or impose a restitution requirement, then there would be no taking (nor any illegal exaction) because ultimately the district court properly exercised its discretion not to order that Mr. Sater pay restitution.  *See Rith Energy, Inc.*, 247 F.3d at 1366 (holding "on the facts of this case, the consequence of assuming the lawfulness of" the agency's actions meant that no taking had occurred).

14

C.     The Complaint Fails To State A Claim For An Illegal Exaction Because The
       Government Has Not Received Or Taken Money From The Gottdieners

As noted above, the Court does not possess jurisdiction over the Gottdieners' illegal

exaction claim because the statutes which they claim were violated do not authorize (in fact they

expressly disclaim) a cause of action against the Government for the return of money.  However,

even assuming Congress had not disclaimed such an action, plaintiffs still would fail to state a

claim for an illegal exaction because "an 'illegal exaction,' as that term is generally used,

involves money that was 'improperly paid, exacted, or taken from the claimant in contravention

of the Constitution, a statute, or a regulation.'"  *Norman v. United States*, 429 F.3d 1081, 1095

(Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl.

1967).  Here, the Gottdieners' claim fails because they do not allege that they paid their money

to the Government (or to a third party as compelled by the Government).  *Piszel v. United States*,

833 F.3d 1366, 1382 (Fed. Cir. 2016) ("Even assuming that an illegal exaction claim can involve

payments to non-governmental entities, there was no exaction here because there was no

payment."); *Andres v. United States*, No. 03-2654, 2005 WL 6112616, at *3 (Fed. Cl. July 28,

2005).  Indeed, in their opposition to our motion to dismiss, plaintiffs readily admit that they are

"*not* claiming that they had a statutory right to receive *money* from the Government." Opp'n. at

7 [ECF Dkt. No. 28].

In their reply, the Gottdeners erroneously rely upon *Suwannee S.S. Co. v. United States*,

279 F.2d 874 (Ct. Cl. 1960). Plf. Opp'n. at 11-12 [ECF Dkt. No. 28].  In that case, the Court of

Claims held that the Government illegally exacted cash from the plaintiff.  *Id.* (suit to recover

unauthorized fee for permission to sell ship to foreign purchaser).  Here, in contrast, the

Gottdieners do not and cannot claim any amount of money that they paid to the

Government.  Plf. Opp'n. at 7 [ECF Dkt. No. 28].  Likewise, plaintiffs' attempted reliance on

*Starr International Co., Inc. v. United States,* 121 Fed. Cl. 428 (Fed. Cl. 2015), *cross appeal argued,* nos. 2015-5103, -5133 (Fed. Cir. Nov. 4, 2016), is misplaced.  In that case, the trial court held that the Government had exacted from AIG shareholders in violation of the Federal Reserve Act when it "acquire[d] [Starr's] equity as consideration for the loan." *Id.*at 434.  Here, the Gottdieners do not allege that the Government has exacted or otherwise acquired any money or other extant financial consideration from them.  Instead, the Gottdieners contend that the E.D.N.Y. district court judge and the USAO EDNY exacted their purported right to sue *Mr. Sater* for restitution.  *Id.*  As we demonstrated, however, Congress expressly disclaimed any cause of action against the Government in the restitution statutes upon which plaintiffs rely.  18 U.S.C. § 3771(d)(6), *supra* at 9-11.  It follows that even assuming any authority supported a claim for an illegal exaction not of money but of notice of a conviction and sentencing and a right to sue a third party for restitution – and plaintiffs cite none – the Gottdieners' claim must fail because the restitution statutes on which they rely preclude, rather than provide, a right against the Government.  In sum, plaintiffs fail to state a claim for illegal exaction.

> D.   Collateral Estoppel Bars Plaintiffs' Claims Because The Issue Of Whether The Gottdieners Were Mr. Sater's Victims Has Already Been Litigated In the Southern District of New York And The Second Circuit

Plaintiffs' takings and illegal exaction claims must be dismissed for the additional reason that they have previously litigated and lost the issue underpinning their claims here – whether the conviction of Mr. Sater was connected to the fraud perpetrated by Mr. Palagonia against the Gottdieners, for which the plaintiffs seek compensation.  We discussed the facts associated with plaintiffs' prior lawsuits in the S.D.N.Y. and the Second Circuit, and our issue preclusion argument, in our motion to dismiss.  Mot. To Dismiss at 16-17 & n.10-11; 33-38 [ECF Dkt. No. 18].

The Gottdieners' response contends that district courts lack jurisdiction to entertain a "takings claim" in excess of $10,000 such that "claim preclusion, cannot apply." Plf. Opp'n. at 26 [ECF Dkt. No. 28]. Our motion's collateral estoppel argument, however, is focused upon *issue* preclusion. Consequently, the Gottdieners' opposition, which appears to be aimed at a straw man of claim preclusion, such as identity of parties and claims, *see* Plf. Opp'n. at 26-29 [ECF Dkt. No. 28], fails to refute our motion.

Similarly, plaintiffs' apparent argument that Mr. Sater plead guilty to a "scheme crime" to which all participants are jointly and severally liable in restitution does not refute our collateral estoppel argument. Mot. To Dismiss at 17-18 [ECF Dkt. No. 18]. The district court dismissed the Gottdieners' civil suit against Mr. Sater for failure to state a claim. *See Estate of Gottdiener*, 35 F. Supp. 3d at 402. The primary ground for dismissing the complaint was that Mr. Sater's was "not convicted 'in connection with' aiding and abetting Palagonia's securities fraud," and thus could not fall within the so-called "conviction exception" to civil RICO actions predicated on securities fraud. *Id*. at 394-95. This exception requires that in order to allege securities fraud as a predicate act in a civil RICO case, the defendant must have been convicted in connection with such fraud. *See* 18 U.S.C. 1964(c). The district court then denied the Gottdieners leave to amend their complaint because "the facts concerning the scope of Defendants' convictions will not change to bring them within the conviction exception to RICO's securities fraud bar." *Id*. at 401-02 ("The scope of Defendants' convictions is determined by the criminal Informations to which they pleaded guilty and which are appended to the Complaint before the Court. Those Informations do not tie Defendants to Palagonia's sales to Plaintiffs."); *see also Estate of Gottdiener* (on reconsideration), 35 F.Supp. 3d. at 405 (denying motion for reconsideration that argued the Gottdieners could amend the complaint to

17

allege primary securities fraud by Sater—instead of aiding and abetting Palagonia—because "as the Court stands by its finding that the conviction exception is inapplicable to the facts as alleged, repleading as Plaintiffs propose would be futile.").  The district court also found that the Gottdieners claims against Mr. Sater had to be dismissed because they failed to plead that their broker Mr. Palagonia had committed any fraud against them based upon actions taken by Mr. Sater.  *See Estate of Gottdiener*, 35 F. Supp. 3d at 398-99 ("Indeed, in the entirety of the Complaint, Defendant Sater is never mentioned in relation to any payment to Palagonia.").

As we previously explained, Plaintiffs have already actually litigated, in the S.D.N.Y. and at the Second Circuit, whether they were victims of the crime to which Mr. Sater pled guilty when the Gottdieners brought a civil RICO suit against Mr. Sater.  As discussed above, in dismissing their complaint, the district court specifically held that Mr. Sater *was not* convicted in connection with Mr. Palagonia's fraud.  *See Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 394-95 (S.D.N.Y.), *on reconsideration,* 35 F. Supp. 3d 402 (S.D.N.Y. 2014) and *aff'd,* 602 F. App'x 552 (2d Cir. 2015) (emphasis added).  Thus, in the civil suit by the Gottdieners against Mr. Sater, the S.D.N.Y. held that the Gottdieners were not Mr. Sater's victims when he committed the acts to which he pleaded guilty before Judge Glasser.

This issue of whether Mr. Sater's conviction was connected to fraud against the Gottdieners was essential to the trial court's judgment and plaintiffs had a full and fair opportunity to litigate the issue in the district court and in the court of appeals; thus, collateral estoppel bars them from relitigating the issue here. Though here the Gottdieners raise the issue of Mr. Sater's involvement with Mr. Palagonia's fraud scheme in the context of their jurisdictionally barred takings/illegal exaction claim, as opposed to a civil RICO suit, the issue that would need to be decided here is the same:  whether Mr. Sater was convicted for aiding Mr.

18

Palagonia's fraud against the Gottdieners.  In their opposition to our motion to dismiss, plaintiffs agree that S.D.N.Y. (as affirmed by the Second Circuit) determined that Mr. Sater was not convicted for aiding Mr. Palagonia's fraud.  Opp'n. at 30 [ECF Dkt. No. 28].  As that question has already been answered in the negative by the district court and affirmed by the Second Circuit, it cannot be relitigated here, and the Gottdieners' claim for the right to sue for restitution from Mr. Sater fails to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, and the reasons articulated in our motion to dismiss, we respectfully request that the Court dismiss the complaint.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant
Attorney General

ROBERT E. KIRSCHMAN, JR.
Director


/s/ Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Assistant Director


/s/ Lisa L. Donahue
LISA L. DONAHUE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 353-9498
Fax. (202) 307-2503
E-mail. lisa.donahue@usdoj.gov


November 30, 2016                    Attorneys for Defendant